EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Antonio Luis Mayol<br><br>Peticionario<br><br>v.<br><br>Ana Ixa Torres, por sí y en representación de su hijo Fabián Andrés Mayol Torres<br><br>Recurrido | Certiorari<br><br>2005 TSPR 45<br><br>163 DPR _____ |

Número del Caso: CC-2002-367

Fecha: 8 de abril de 2005

Tribunal de Apelaciones:

      Circuito Regional VI Caguas/Humacao/Guayama

Panel integrado por su Presidente, el Juez Soler Aquino, los Jueces Salas Soler y Escribano Medina

Abogada del Peticionario:

      Lcda. Sylvia Juarbe Berrios

Abogado de la Recurrida:

      Lcdo. Eduardo J. Viñas Negrón

Materia: Impugnación de Paternidad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Antonio Luis Mayol

    Peticionario

      v.

Ana Ixa Torres, por sí y en representación de su hijo Fabián Andrés Mayol Torres

    Recurridos

Certiorari

CC-2002-367

Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 8 de abril de 2005.

La controversia planteada en este caso nos requiere determinar si se puede impugnar un reconocimiento voluntario por la única razón de que la filiación jurídica no corresponde a la realidad biológica. Esto a su vez, nos obliga examinar si un padre que ha reconocido serlo voluntariamente puede impugnar la veracidad de la paternidad derivada de dicho reconocimiento. En otras palabras, debemos resolver si existe en Puerto Rico la acción para impugnar el reconocimiento por inexactitud, aceptada en España y otros países de raigambre civilista.

De ser así, debemos decidir si el Tribunal de Primera Instancia puede ordenar pruebas científicas para determinar la filiación, a petición del reconocedor.

I.

El menor aquí recurrido nació el día 3 de agosto de 2000, alegadamente fruto de las relaciones sentimentales entre el peticionario, Antonio Luis Mayol y la demandada-recurrida, Ana Ixa Torres. Los padres del menor no eran casados entre sí al momento de su nacimiento. El peticionario reconoció al menor voluntariamente el 11 de agosto de 2000. Posteriormente fue inscrito en el Registro Demográfico de Puerto Rico con los apellidos Mayol Torres.

El 6 de noviembre de 2000, el peticionario presentó una demanda impugnando el reconocimiento que había hecho voluntariamente. En su demanda alegó específicamente que no era el padre del menor reconocido, por lo cual **negaba su paternidad**. El demandante llamó a esta acción "impugnación de paternidad." Alegó que había sido inducido a error mediante dolo de la demandada. Para probar lo alegado solicitó al tribunal que ordenara pruebas de paternidad.

Los demandados-recurridos se opusieron a la solicitud del peticionario. Alegaron que el demandante no tenía derecho a una acción de impugnación de paternidad sino a una acción de impugnación de reconocimiento. Sostuvieron que una vez hecho un reconocimiento voluntario no se puede impugnar la paternidad sino únicamente el reconocimiento y sólo impugnando el consentimiento prestado. Luego de varios trámites procesales y tras celebrarse una vista en la que se escucharon las posiciones de las partes, el Tribunal de Primera Instancia ordenó que el peticionario, la recurrida y el menor se sometieran a las pruebas de

histocompatibilidad y de ADN. En su resolución el Tribunal de Primera Instancia afirmó que resolvía amparándose en la Regla 82 de las de Evidencia de Puerto Rico, 32 LPRA Ap. IV, R.82, y velando por la estabilidad en cuanto [al] status legal y ... los mejores intereses del menor.

De esa orden recurrieron los demandados al entonces Tribunal de Circuito de Apelaciones. Ese foro apelativo revocó y resolvió que el tribunal de instancia debía celebrar "una vista evidenciaría para allí dilucidar la veracidad de las alegaciones del recurrido **en cuanto a la existencia del vicio del error en el reconocimiento otorgado.**" (Énfasis nuestro). Fundamentó su decisión en la sentencia dictada por este Tribunal en <u>Oaks Reyes v. Ortiz Aponte</u>, 135 DPR 898, 899 (1994). Allí expresamos que cuando se impugna un reconocimiento voluntario se debe posponer "cualquier otra acción hasta tanto el demandante demuestre que el reconocimiento está viciado por razón de violencia, intimidación o error."

Inconforme con la decisión del foro apelativo, el peticionario recurre y plantea que dicho foro erró en su apreciación de lo que resolvimos en <u>Oaks Reyes v. Ortiz</u>, *supra*, y que la decisión en ese caso se trataba de una sentencia, "sin que el Honorable Tribunal dispusiera expresamente que se publicara y por consiguiente, ni crea, ni modifica ninguna norma de derecho."

También aduce que: "erró el Honorable Tribunal de Circuito de Apelaciones al revocar la resolución recurrida, en virtud de la cual se requería al demandante y a los demandados someterse a las Pruebas de Histocompatibilidad...", a pesar de que en su Sentencia

el Honorable Tribunal de Circuito Apelaciones reconoce que: "De acuerdo a lo señalado por el Supremo en la nota al calce número 19 del caso Almodóvar v. Méndez, *supra*, en una acción de impugnación del reconocimiento el foro de instancia puede ordenar que se realicen pruebas de sangre a quien reconoció al menor, siempre y cuando en dicho procedimiento los resultados de las pruebas se utilicen exclusivamente para demostrar que el reconocimiento estuvo viciado y no para impugnar la relación biológica".

Examinado el recurso, ordenamos a los recurridos mostrar causa por la cual no debíamos revocar la sentencia del tribunal apelativo. Con el beneficio de su comparecencia y habiendo estudiado los planteamientos de ambas partes, procedemos a resolver.

## II.

Al abrirnos paso hacia la solución de la presente controversia necesitamos delimitar, de inicio, los contornos y los caracteres de la figura jurídica de la filiación. Este ejercicio resulta fundamental, en la medida en que el reconocimiento voluntario, como discutiremos más adelante, actúa como herramienta para determinar la filiación.

Hemos definido la filiación como la "condición a la cual una persona atribuye el hecho de tener a otra u otras por progenitores suyos; es un **hecho biológico** consistente en la **procreación** de una persona por otras, una inicial **realidad biológica** recogida y regulada por el ordenamiento jurídico con el fin de distribuir derechos y obligaciones." Sánchez Encarnación v. Sánchez Brunet,

opinión de 13 de julio de 2001, 154 DPR ___, 2001 TSPR 107, en la pág. 11 (citando a IV Luis Díez-Picazo y Antonio Gullón, Sistema de Derecho Civil (7ma ed. 1997), énfasis nuestro.

Se observa que la filiación así definida se desdobla en filiación jurídica y filiación biológica, figuras que están vinculadas entre sí, en tanto la primera presupone la segunda. Al respecto, Albaladejo señala que "el estado jurídico de la filiación se basa... en el **vínculo natural de sangre**... y debe ligar, en principio, a todo generante con todo generado." IV Manuel Albaladejo, Curso de Derecho Civil, Derecho de Familia 212 (1982), énfasis nuestro. Sobre esta distinción entre la filiación como fenómeno jurídico y la filiación como hecho biológico, Lacruz Berdejo aporta lo siguiente:

> Del hecho de que toda persona deba la existencia a su procreación o generación por un hombre y una mujer deriva su filiación (biológica) respecto de sus progenitores, y también su filiación jurídica, expresión para el Derecho, en línea de principio, de aquella relación biológica. De ese hecho jurídico de la filiación deriva luego la relación jurídica de filiación (de paternidad/maternidad, vista desde el lado de los progenitores), entendida como la existente entre generantes y generados, padres e hijos con el conjunto de derechos, deberes, funciones y, en general, relaciones, que los vincula en una de las más ricas y complejas instituciones jurídicas y humanas que el Derecho contempla." IV José Luis Lacruz Berdejo, et al., Elementos de Derecho Civil, Derecho de Familia 419 (4ta. Ed. 1997).

En cuanto a los efectos de la determinación de filiación, siempre hemos destacado lo amplio y complejos que son los derechos y obligaciones que ésta conlleva. Así, hemos expresado que "...de la filiación dependen varios estados civiles, que como tales, concretan la

capacidad e independencia de la persona." <u>Almodóvar v.</u>
<u>Méndez Román</u>, 125 DPR 218, 232 (1990). En ese caso
explicamos que:

> ...de ser hijo de tal o cual persona deriva
> que se tenga una u otra nacionalidad, o una u
> otra vecindad ... cualidades éstas que deciden
> el régimen de los demás estados de la persona,
> ya que la capacidad y las relaciones
> familiares se rige[n] por la ley personal ...
> aparte de la trascendencia que la
> determinación de la ley personal tiene en el
> régimen de otras materias (sucesiones,
> donaciones, obligaciones ...). De la filiación
> depende *directamente* además la determinación
> de las personas que están legitimadas para
> provocar un cambio de estado civil
> (emancipación, adopción), o para promover
> judicialmente el cambio (por incapacitación).
> La filiación determina, también, las personas
> a quienes se está sujeto durante la minoría de
> edad (o en situación de patria potestad
> prorrogada). Influye la filiación en el poder
> de la persona: por la filiación se conoce si
> una persona tiene herederos forzosos, con la
> consiguiente trascendencia en relación con la
> potestad de donar ... o de disponer "mortis
> causa" ... o, en general, con la potestad de
> gestión del propio patrimonio (por la posible
> declaración de prodigalidad ...). <u>Almodóvar v.</u>
> <u>Méndez Román</u>, *supra*, en la pág. 233 (1990)
> (citando a I Manuel Peña y Bernaldo de Quirós, De la
> paternidad y filiación, en *Manuel Amorós*
> *Guardiola,et al., Comentarios a las reformas*
> *del derecho de familia*, 795 (1984), énfasis en
> el original.

Queda claro que la filiación incide con mayor
intensidad en el derecho de familia (en aquello
relacionado con el estado civil, la persona, el derecho
de alimentos, patria potestad, entre otros aspectos) y el
derecho sucesorio. Sin embargo, no debemos soslayar las
notables consecuencias vinculadas al Derecho Penal
derivadas de la determinación de filiación. Entre otras,
nuestro Código Penal dispone en su artículo 122, 33 LPRA
sec. 4121 (2003), que serán sancionadas con pena de
reclusión de seis años los ascendientes y descendientes,
y colaterales por consanguinidad que contraigan

matrimonio o sostengan relaciones sexuales entre sí. Por eso, este Tribunal ha considerado la filiación como "la nota de mayor jerarquía dentro del parentesco y portadora de las más importantes consecuencias jurídicas." Sánchez Encarnación v. Sánchez, *supra* en la pág 13 (citando a RUTH ORTEGA-VÉLEZ, COMPENDIO DE DERECHO DE FAMILIA 388 (1997). La filiación no se limita, pues, a establecer vínculos tendentes a identificar relaciones entre componentes de la sociedad, sino que va dirigida a imponer derechos y obligaciones concretas de consecuencias permanentes.

A este punto es preciso aclarar que los ordenamientos jurídicos, concientes de que históricamente la filiación no ha sido fácil de determinar, han reconocido que el elemento biológico no es el único factor que debe considerarse en controversias filiatorias. Véase IV JOSÉ LUIS LACRUZ BERDEJO, ET AL., ELEMENTOS DE DERECHO CIVIL, DERECHO DE FAMILIA 419-421 (1997). A tono con esto, recientemente sostuvimos que "la relación filiatoria se ha catalogado como una fundamentalmente jurídica que para establecerla requiere de una serie de criterios, de los cuales **los básicos son los biológicos** aunque éstos no siempre entran en acción." Castro Torres v. Negrón Soto, opinión de 23 de mayo de 2003, 159 DPR__, 2003 TSPR 90, en la pág. 8 ( citando a IV LUIS DÍEZ-PICAZO Y ANTONIO GULLÓN, SISTEMA DE DERECHO CIVIL, DERECHO DE FAMILIA 249 (1997), énfasis nuestro.

Adviértase que puede darse una filiación biológica, aunque no jurídica, cuando no conste quiénes son los padres de una persona. También puede darse el caso de que quien figure como padre jurídico no lo sea

biológicamente.[1] Evidentemente en este campo tan complejo, por la conjunción de intereses privados y públicos y por las dificultades de la prueba, "el vínculo biológico no basta por sí mismo para hacer nacer el vínculo jurídico." *Id.* (citando a Ruth Ortega-Vélez, Compendio de Derecho de Familia 384 (2000)[2].

Sin embargo, si bien el vínculo biológico no es el único factor al momento de determinar la filiación de una persona, no hay duda de que los ordenamientos jurídicos más modernos tratan, en lo posible, de que la realidad biológica coincida con la realidad jurídica. Esto es, que la filiación jurídica de las personas corresponda a sus padres biológicos. *Véase* IV. José Luis Lacruz Berdejo, et al., Elementos de Derecho Civil, Derecho de Familia 420-22 (4ta ed. 1997). Esta nueva corriente es, a nuestro juicio, consistente con la concepción ya establecida de la filiación biológica como presupuesto de la filiación jurídica.

La doctrina ha reconocido la existencia de dos corrientes o teorías sobre la institución jurídica de la

---

[1]  Esto puede suceder, principalmente, en dos situaciones: cuando se reconoce a quien se creyó hijo pero realmente no lo es, y cuando se reconoce a un menor conociendo que no es hijo biológico del reconocedor. Este último caso se denomina en la doctrina como el "reconocimiento por complacencia." *Véase* Manuel Albaladejo García, El Reconocimiento de la Filiación Natural 218 (1954).

[2]  Huelga señalar que nuestra discusión se refiere a la filiación natural, dejando a un lado la llamada filiación adoptiva.  Nótese que la primera se refiere a aquella filiación que "institucionalmente tiene una base biológica, y que la ley considera en principio que el padre/madre es progenitor(a) del hijo (sin perjuicio de que, por la razón que fuera no lo sea en la realidad." IV. José Luis Lacruz Berdejo, et al., Elementos de Derecho Civil, Derecho de Familia 426 (4ta ed. 1997). Por otra parte la filiación por adopción se refiere a la excepcional situación jurídica en la que por principio se prescinde de la base biológica.  En ésta el acto jurídico de la adopción sustituye ante el Derecho el hecho natural del nacimiento. *Id.*

filiación. Una es la llamada **"realista"**, presidida por el denominado **"principio de veracidad"**, que si bien reconoce que "la filiación jurídica no es mera relación biológica", otorga preeminencia a ésta y facilita mecanismos jurídicos para llegar a ella, "al menos en la vía judicial y siempre que sea posible alcanzar aquella verdad biológica." Para esto admite libremente "la investigación de la paternidad y/o maternidad, tanto en el orden positivo (su declaración cuando es jurídicamente desconocida) como en el negativo (impugnando la filiación no veraz), y permite en ese contexto la utilización de toda clase de pruebas (las biológicas son muy eficientes y fiables)." IV José Luis Lacruz Berdejo, et al., Elementos de Derecho Civil, Derecho de Familia 420 (4ta ed. 1997).

En contraposición a la postura realista se encuentra la concepción **"formalista"** de la filiación, que coloca la verdad y la realidad biológica en un segundo plano y otorga mayor peso a otros elementos o principios, tales como la paz familiar y la seguridad jurídica. Igualmente, toma en cuenta la dificultad de probar la verdadera paternidad y establece esquemas para determinar la filiación que están fundamentados en factores como la voluntad unilateral o en ciertas presunciones. Llevada al extremo, la tendencia formalista dificulta recurrir a otros medios probatorios, particularmente la investigación de la paternidad biológica. *Id.* en la pág. 420.

La adopción de determinada política pública sobre la filiación conlleva, entre otros, establecer los procedimientos para determinarla y, particularmente, "qué papel haya de jugar en su determinación la voluntad

(arbitraria, a veces) de los progenitores, y hasta dónde sea admisible la reclamación judicial de una determinada filiación o paternidad, o la negación de la que ya existe en apariencia." Id en la pág. 421.

Lacruz Berdejo hace hincapié en que "probablemente el Derecho de filiación es una de las materias del Derecho de familia que más profundas alteraciones ha experimentado a nivel mundial a lo largo del presente siglo..." *Id.* en la pág. 421. Señala, además, varias características específicas que han distinguido las nuevas leyes occidentales sobre filiación. Así, destaca que el denominador común de éstas es "la equiparación en contenido y derechos de la filiación matrimonial y extramatrimonial; la no distinción de clases o subtipos dentro de la filiación extramatrimonial... **y la gran apertura en orden al establecimiento de la filiación**, sobre todo en vía judicial, **y en cuanto a su impugnación, con su amplia admisibilidad y uso práctico de las pruebas biológicas.**" *Id.* en la pág. 422, énfasis nuestro.

Refiriéndose específicamente al ordenamiento jurídico español, este autor concluye que "...habida cuenta del **principio realista** que preside la concepción de ...[la] filiación en el Código tras la reforma de **1981**, es evidente que **el hecho determinante de la filiación jurídica es la procreación biológica,** causa iuris y fundamento básico de la misma." *Id.* en la pág. 429, énfasis nuestro.

Este mismo principio realista se ha reflejado en nuestras opiniones sobre filiación y con el paso del tiempo se ha ido imponiendo como criterio decisivo en

nuestra jurisprudencia.[3] Así, en <u>Moreno Alvarado v. Moreno</u>
<u>Jiménez</u>, 112 DPR 376(1982), resolvimos que la presunción
de paternidad establecida en el artículo 113 del Código
Civil, 31 LPRA sec. 461 (2003),[4] puede ser impugnada con
cualquier prueba idónea y concluyente que la revirtiera.
En ese caso admitimos la importancia de igualar, en lo
posible, la filiación jurídica con la biológica, y
resolvimos inspirándonos en tres postulados básicos:

> Primero, que en su función normativa y
> remedial el Derecho atiende y tutela
> necesidades, problemas y experiencias del ser
> humano. Éste, como autor y receptor de la ley,
> le nutre e inyecta en gran medida, a las
> soluciones que provee, su conocimiento y
> juicio valorativo ideológico, moral y
> económico. Segundo, que la norma legal no es
> enemiga --o no debe serlo-- de la verdad
> científica. Son entera y perfectamente
> reconciliables. Y tercero, que la realidad
> científica, al igual que los factores sociales
> contemporáneos que circundan la vida del
> derecho ...no pueden ser descartados por los
> tribunales en abono de un estado negatorio de
> la realidad de las cosas o de la personalidad
> humana. <u>Moreno Alvarado</u>, *supra*, en la pág.
> 376(1982).

Esta tendencia realista se manifestó más tarde en
<u>Ramos v. Marrero</u> 116 DPR 357, (1985). Allí reconocimos
que quien alega ser el padre biológico tiene facultad
para impugnar la paternidad legítima ostentada por otro

---

[3]   En <u>Ocasio v. Díaz,</u> 88 DPR 676 (1963), tras el
advenimiento de un nuevo orden constitucional en Puerto
Rico provocado por la adopción de la Constitución del
Estado Libre Asociado de Puerto Rico de 1952, sostuvimos
que sólo hay "hijos", sin conceder pertinencia alguna a
las antiguas clasificaciones de ilegítimos, naturales,
adulterinos, etc. Aunque no fue el criterio determinante,
también hicimos referencia a la concepción realista de la
filiación. *Véase* <u>Ocasio v. Díaz</u>, supra, en la pág. 699.

[4]   "Son hijos legítimos los nacidos después de los
ciento ochenta días siguientes al de la celebración del
matrimonio y matrimonio y antes de los trescientos días
siguientes a su disolución. Contra esta legitimidad no se
admitirá otra prueba que [no sea] la imposibilidad física
del marido para tener acceso con su mujer en los primeros
ciento cien días de los trescientos que hubiesen
precedido al nacimiento del hijo." 31 LPRA sec. 461
(2003).

hombre. Al decidir de ésta forma, resolvimos que de la misma manera que un hijo tiene derecho a que se le reconozca su verdadera filiación, el verdadero padre tiene derecho a que se le reconozca como tal. En dicho caso puntualizamos que el desarrollo del Derecho jurisprudencial en materia de filiación tiene como objetivo abrir caminos a través de los prejuicios y los tecnicismos legales "para hacer que **brille la verdad** y se reconozca a todos los fines legales la **relación biológica** entre los padres." *Id.* en la pág. 358, énfasis nuestro. Afirmamos entonces que nuestro pensamiento jurídico es cónsono con "[e]l énfasis moderno en el descubrimiento de la verdad biológica." *Id.*, en la pág. 364.

Más recientemente, en <u>Castro Torres v. Negrón Soto</u>, *supra*, explicamos que desde <u>Ocasio v. Díaz</u>, *supra*, el alegado padre biológico tiene legitimación activa para atacar la presunción de paternidad que surge en virtud del reconocimiento del niño por otro hombre. Llamamos la atención entonces al surgimiento de "un nuevo giro en la doctrina legal cuyo objetivo es tratar en lo posible, de que la realidad biológica coincida con la realidad jurídica." *Id.*

A través de este desarrollo jurisprudencial, hemos adoptado la doctrina española sobre filiación, que unánimemente sostiene que el factor esencial en la determinación de la filiación es el biológico. Como sugerimos anteriormente, esta visión nos requiere reconocer que la filiación debe ser la confirmación jurídica de la realidad biológica.

III.

Sin menoscabar las afirmaciones anteriores, no podemos obviar que la realidad biológica no es siempre fácil de descubrir. Por eso los ordenamientos jurídicos han establecido medios para determinarla. Nótese que la filiación materna es casi siempre evidente y de fácil comprobación, por el incuestionable hecho biológico del nacimiento, que inevitablemente vincula a la progenitora con su hijo y la convierte en su madre jurídica. En cambio, cuando se trata de encontrar quién es el padre, estamos ante un panorama distinto.

Por eso, los ordenamientos jurídicos civilistas han desarrollado dos vías distintas para determinar la filiación paterna. IV LUIS DÍEZ PICAZO Y ANTONIO GULLÓN, SISTEMA DE DERECHO CIVIL, DERECHO DE FAMILIA 256 (7ma. Ed. 1997). La primera es la filiación matrimonial, basada en la institución del matrimonio. Ésta se establece, en cuanto al padre, por operación de unas presunciones que señalan que el marido es padre si el hijo nace en determinado momento, siempre usando el matrimonio como punto de referencia. A ese fin el Código Civil establece las siguientes presunciones:

> [1]. Son hijos legítimos los nacidos después de los ciento ochenta días siguientes a la celebración del matrimonio y antes de trescientos días siguientes a su disolución. Artículo 113 del Código Civil de Puerto Rico, 31 LPRA 461 (2003).

> [2]. Igualmente es legítimo el hijo nacido dentro de los ciento ochenta días siguientes a la celebración del matrimonio, si el marido no impugnare su legitimidad. Artículo 114 del Código Civil de Puerto Rico, 31 LPRA 462 (2003).

En segundo lugar, se accede a la filiación paterna por la vía no matrimonial. Esta filiación ni se concibe

ni nace dentro de un matrimonio, por lo cual no es posible apelar a la presunción de paternidad. Por eso la filiación no matrimonial sólo puede acreditarse voluntariamente, cuando él o los padres reconocen al hijo, o forzosamente, cuando se impone ese reconocimiento mediante el ejercicio de la acción judicial correspondiente.[5]

Se observa que tanto el reconocimiento voluntario como la presunción de paternidad sirven para subsanar la dificultad que presenta la determinación de la verdadera relación biológica entre un padre y un hijo. Son instituciones jurídicas que pretenden llenar el vacío dentro del ideal de que cada niño tenga su padre biológico reconocido por la ley. Es por esta razón que recientemente reiteramos que "el reconocimiento que de su hijo hace un padre natural produce análogos efectos a la presunción de legitimidad de los hijos habidos de matrimonio legalmente celebrado... En virtud de ello, queda claro que hemos reconocido la existencia de dos presunciones de paternidad con iguales efectos, la que establece el Artículo 113 del Código Civil... y la presunción derivada del reconocimiento que los supone hijos del reconocedor." <u>Castro Torres v. Negrón Soto</u>, *supra*, en la pág. 15 (citando la Sentencia del Tribunal Supremo de España de 25 de junio de 1909).

---

[5] En el ámbito de estas acciones judiciales de reclamación de paternidad, nuestras reglas de evidencia establecen que "se presumirá controvertible la paternidad en aquellos casos en que un padre putativo o sus padres, hijos, hermanos o nietos, se negaren a someterse al examen genético ordenado por el tribunal." Regla 82 (C) de las de Evidencia de Puerto Rico, 32 LPRA Ap. IV, R. 82(c).

Tomando en cuenta lo anterior, también hemos sostenido que el reconocimiento es el medio principal y más importante para la determinación de la filiación no matrimonial. Sánchez Encarnación v. Sánchez Brunett, *supra*, en la pág. 16. Lo hemos definido como "un acto por el que el que lo realiza se declara padre (o madre...) del hijo de que se trata. Esencialmente consiste, pues, sólo, en una pura y simple afirmación de paternidad o maternidad **biológica**. Ese es su contenido necesario, pero también suficiente." *Id.* y Almodóvar v. Méndez Román, *supra*, en la pág. 239 (citando a VI Manuel Albaladejo, Curso de Derecho Civil, Derecho de Familia 227 (1982), énfasis nuestro.

En cuanto a la naturaleza jurídica del reconocimiento, luego de bastante controversia, centrada principalmente en si se trataba de un acto o negocio jurídico[6], la inmensa mayoría de los tratadistas están contestes, aunque con ciertos matices, en que el reconocimiento voluntario es un acto jurídico. Su contenido es una declaración de ciencia, es decir de algo que se conoce, en la cual el reconocedor declara su paternidad biológica y confirma implícitamente las relaciones sexuales habidas con otra persona y su

---

[6] La corriente doctrinal que entendía que el reconocimiento constituía un negocio jurídico sostenía que este se era "una declaración de voluntad productora de amplios efectos jurídicos." Lacruz Berdejo et.al., *supra* en al pág. 488. Se consideraba que la ley otorgaba a la voluntad individual fuerza suficiente para configurar los efectos jurídicos y para crear una "nueva situación jurídica." Almodóvar *supra*, en la pág. 231. En contraposición a esta corriente se encontraban aquellos que entendían que el reconocimiento voluntario constituía un acto jurídico. Estos señalaban que los efectos del reconocimiento no se producen por efecto de la voluntad individual, sino por la ley. *Id.* Es decir que quien reconoce no puede a su antojo extender o limitar los efectos jurídicos de su reconocimiento.

creencia de que el hijo es suyo. Véase IV José Luis Lacruz Berdejo, et al., Elementos de Derecho Civil, Derecho de Familia 488 (4ta. Ed. 1997), IV Luis Diez Picazo y Antonio Gullón, Sistema de Derecho Civil, Derecho de Familia 262 (7ma ed. 1997), Bernaldo de Quirós, De la paternidad y filiación, en *Manuel Amorós Guardiola, et al., Comentarios a las reformas del derecho de familia*, 903 (1984). Como corolario se señala que "[e]l reconocimiento es una afirmación de paternidad simplemente" y se sostiene que el elemento biológico es su elemento esencial. Diez Picazo, *supra* en la pág. 262.

En Almodóvar v. Méndez, *supra*, resumimos las seis características fundamentales del reconocimiento voluntario, a saber, que se trata de un acto individual[7]; personalísimo[8]; unilateral[9]; formal, expreso y solemne; puro[10] e irrevocable. Almodóvar v. Méndez, *supra*, en la pág. 237; Sánchez Encarnación v. Sánchez Brunet, *supra*.

---

[7] Se refiere al hecho de que sólo podía conocerse la identidad de la persona que lo efectuaba y no la del otro progenitor. Almodóvar v. Méndez, 128 DPR 218, 237 (1991).

[8] Al respecto hemos señalado "que debía ser realizado por el padre o la madre. No obstante, Castán estimaba que no había inconveniente legal en admitir un reconocimiento por medio de mandatario, con poder especial formalizado en documento público. Otros, por el contrario, negaban esta posibilidad." Almodóvar v. Méndez, 128 DPR 218, 237 (1991).

[9] Esta característica suscitó cierta controversia dentro de la doctrina española debido a que el artículo 133 del Código Civil Español, al admitir el reconocimiento de una persona mayor de edad, requería su consentimiento. Según Diez-Picazo esto hacía pensar que el "reconocimiento tenía carácter bilateral; sin embargo, en opinión de Albaladejo, el consentimiento del mayor era un presupuesto de eficacia, una conditio iuris, pero que no tenía por ello el reconocimiento carácter bilateral." Asimismo se ha propuesto por cierto sector de la doctrina española que el reconocimiento puede ser realizado por ambos progenitores en conjunto. No obstante, este mismo sector reconoce que esta postura no interfiere con el carácter unilateral del reconocimiento puesto que en casos de reconocimiento conjunto lo que existe es una "manifestación coetánea de dos voluntades coincidentes." Luis Diez Picazo y Antonio Gullón, *supra*, en la pág 262.

IV.

La impugnación del reconocimiento está irremediablemente atada a la filosofía de cada sistema jurídico particular y, en lo que nos concierne, a su concepto o visión del reconocimiento voluntario. Hecha esta aclaración, antes de precisar los parámetros de la impugnación del reconocimiento en nuestro ordenamiento, debemos comenzar por distinguir entre la irrevocabilidad del reconocimiento que se hace voluntariamente y la posibilidad de su impugnación.

Que el reconocimiento sea irrevocable se refiere a que no puede deshacerse mediante otro acto posterior de voluntad. Tan es así que aunque se reconozca a un hijo o hija en documentos que el ordenamiento permita revocar, el reconocimiento es válido aunque posteriormente se revoque el documento. Artículo 672, 31 LPRA sec. 2235 (2003). En esencia, no se permite al reconocedor arrepentirse.

**La impugnación, sin embargo, es un supuesto distinto**, que se refiere no a un acto de voluntad contradictorio, sino a la acción de cuestionar en los tribunales la validez y efectividad jurídica del acto de voluntad original, por fundamentos jurídicos aceptados por el ordenamiento. Así, el principio de irrevocabilidad prohíbe al reconocedor invalidar su propia declaración anterior, o sea, arrepentirse, mientras la acción para impugnar un reconocimiento voluntario tiene como objeto que **el estado deje sin efecto** una filiación extramatrimonial legalmente establecida. Véase JOSÉ LACRUZ

---

[10] Se refiere a que es un acto que no puede estar sometido a ninguna condición, termino o modo. _Almodóvar v. Méndez_, supra, en la pág. 237.

BERDEJO ET AL., ELEMENTOS DE DERECHO CIVIL, DERECHO DE FAMILIA, *supra*, en la pág. 512. Manuel de la Cámara distingue entre estos dos supuestos con gran precisión, al señalar lo siguiente:

> En sentido técnico, la revocación significa un cambio de voluntad del autor de la declaración negocial que priva de efectos al negocio jurídico de que se trate en los supuestos permitidos por ley. Pero una declaración de ciencia no puede ser revocada porque en tanto expresa el convencimiento de su autor sobre un determinado hecho y un determinado momento sólo cabe ésta disyuntiva: o el declarante formuló una afirmación (en la medida que reconoció un hecho o expresó su convicción sobre la existencia del mismo a pesar de no creer en él) y entonces no se trata de revocar la declaración sino de impugnarla, o manifestó lo que realmente creía cuando declaró y entonces o la declaración es inconmovible o sólo es posible atacarla demostrando que el hecho reconocido no es exacto, aunque el declarante lo tuviera por tal. Pero ninguna de las dos posibilidades tiene nada que ver con la revocación propiamente dicha. III 1 MANUEL ALBALADEJO, COMENTARIOS AL CÓDIGO CIVIL Y COMPILACIONES FORALES, 895 (Manuel de la Cámara Álvarez, autor del comentario)(1984).

En su sentencia de 20 de enero de 1967 el Tribunal Supremo Español abordó esta diferencia de la manera siguiente:

> El reconocimiento es en principio irrevocable por exigencias de seguridad del estado civil de las personas, dado que el cambio de voluntad del reconocedor es incompatible con las condiciones de permanencia de todo estado civil... pero este principio de irrevocabilidad no es tan absoluto que impida en todo caso la impugnación del reconocimiento, dado que al dimanar éste de la exclusiva voluntad del reconocedor, tal voluntad puede estar invalidada cuando se acredite que, al emitirse, estaba viciada por error, dolo, intimidación o violencia, **o cuando se justifique que el reconocido no es hijo del que le reconoció.** STS de 20 de enero de 1967, (*citada* en ALBALADEJO, *supra*, en la pág. 399, énfasis nuestro).

Teniendo en cuenta esta importante distinción, la doctrina española ha reconocido tres acciones tendentes a impugnar el reconocimiento, cada una por distintos

fundamentos: "Ello, en virtud de que la validez de un reconocimiento depende de que: (1) el reconocido sea hijo natural del reconocedor, (2) el reconocedor quiera recta y libremente declarar que es su hijo natural y (3) el reconocedor lo declare debidamente siguiendo los requisitos de forma establecidos para ello." Castro Torres v. Negrón Soto, *supra* en la pág. 19 (citando a Manuel Albaladejo, El Reconocimiento de la Filiación Natural 185 (1954).

La primera de estas acciones es la de nulidad absoluta del reconocimiento. En ésta se considera nulo el reconocimiento al faltar algún requisito que impida la eficacia del acto jurídico. Esto significa, por ejemplo, que el reconocimiento será ineficaz si es contrario a un título de legitimación anterior que acredite una filiación contradictoria. Castro Torres v. Negrón Soto, *supra* en la pág. 19 (citando a  G.A. Bossert, Régimen Legal de Filiación y Patria Potestad: Ley 23.264, 245-247 (2da. Ed. 1987); Manuel Peña y Bernaldo de Quirós, *supra* en la pág. 936).

La segunda es la acción de impugnación por vicios en el consentimiento. Ésta se refiere a reconocimientos que, en principio, son eficaces y, a la vez, impugnables por adolecer la voluntad del reconocedor de algún vicio o defecto. Manuel Peña y Bernaldo de Quirós, *supra*, en la pág. 937, Manuel Albaladejo, Curso de derecho civil, *supra*, en la pág. 261. El que impugna el reconocimiento por esta razón tiene que demostrar, a satisfacción del tribunal, que éste se llevó a cabo mediando error, violencia o intimidación. Sánchez Encarnación v. Sánchez Brunet, *supra*; Almodóvar v. Méndez, *supra*, en la pág. 243.

Respecto a esta acción señalamos en <u>Castro Torres v. Negrón Soto</u>, *supra* en la pág. 20, que al ejercitarla "resulta irrelevante la cuestión de si el reconocido es o no hijo del reconocedor. Esto es, no se cuestiona la verdad de la filiación, ni se ataca el nexo biológico, sino sólo la validez del reconocimiento como título de determinación legal."

Ahora bien, la doctrina reconoce una tercera vía de impugnación. Ésta consiste en la impugnación del reconocimiento **por no coincidir éste con la realidad biológica**. <u>Castro Torres v. Negrón Soto</u>, *supra* en las págs. 20-21 (citando a MANUEL PEÑA Y BERNALDO DE QUIRÓS, *supra*, 937). Algunos autores llaman a esta acción "impugnación del reconocimiento por inexactitud"[11], o "impugnación stricto sensu."[12] Otros se refieren a ella, sencillamente, como **"impugnación de filiación."** [13] Estos son, particularmente, los autores que diferencian entre la "impugnación del reconocimiento" y la "impugnación de filiación"[14], porque la primera se limita a impugnar el reconocimiento por vicios en el consentimiento solamente y la segunda se refiere a situaciones en las que se ataca la relación biológica. Véase JOSÉ LACRUZ BERDEJO ET AL.,

---

[11] III 1 MANUEL ALBALADEJO, COMENTARIOS AL CÓDIGO CIVIL Y COMPILACIONES FORALES, 895-930 (Manuel de la Cámara Álvarez, autor del comentario)(1984).

[12] JOSÉ LACRUZ BERDEJO ET AL., ELEMENTOS DE DERECHO CIVIL, DERECHO DE FAMILIA, *supra*, en la pág. 512.

[13] LUIS DÍEZ-PICAZO Y ANTONIO GULLÓN, supra, en la pág. 278; JOSÉ LACRUZ BERDEJO ET AL., ELEMENTOS DE DERECHO CIVIL, DERECHO DE FAMILIA, *supra*, en la pág. 512. (Este autor utiliza ambos términos).

[14] Fue esta terminología la que utilizó el demandante peticionario, al referirse a su demanda como una de impugnación de paternidad.

ELEMENTOS DE DERECHO CIVIL, DERECHO DE FAMILIA, *supra*, en la pág. 512.

Mediante esta acción de "impugnación de filiación" se contradice **el contenido** del reconocimiento, es decir, la existencia de nexo biológico entre el reconocedor y el reconocido. BOSSERT, *supra*, en la pág. 245. En cuanto a esto se ha dicho que si bien el reconocimiento es signo suficiente de la filiación que proclama, "cuando en juicio de impugnación se le oponga ... que la verdad es otra, la **verdad prevalecerá frente al título.**" MANUEL PEÑA Y BERNALDO DE QUIRÓS, *supra*, en la pág. 937, énfasis nuestro. En igual sentido se expresa Manuel de la Cámara: **"Claro está que una vez impugnada con éxito la realidad de la filiación, el reconocimiento deviene nulo, puesto que ha determinado una filiación inexacta."** III-1 MANUEL ALBALADEJO, COMENTARIOS AL CÓDIGO CIVIL Y COMPILACIONES FORALES, 895-930 (Manuel de la Cámara Álvarez, autor del comentario)(1984), énfasis nuestro.

Dentro del ordenamiento jurídico español no existe ninguna controversia sobre la admisibilidad de ésta vía de impugnación. De hecho, fue reconocida hace al menos cinco décadas, cuando se publicó el primer estudio extenso sobre la filiación natural. Véase MANUEL ALBALADEJO GARCÍA, EL RECONOCIMIENTO DE LA FILIACIÓN NATURAL 186 (1954). En su obra, Albaladejo demostró que los reconocimientos voluntarios podían ser inválidos y por ende impugnables, entre otras razones, por no coincidir con la realidad biológica. Su análisis reveló que la doctrina francesa e italiana de la época reconocían que el reconocimiento era impugnable por esa razón. El Código Civil Italiano de

1942 expresamente admitía, en su artículo 263, la impugnación por falta de veracidad. *Id.*

En Puerto Rico, el tratadista Eduardo Vázquez Bote ha propuesto que nuestro derecho estatutario admite esta vía de impugnación. XI EDUARDO VÁZQUEZ BOTE, DERECHO PRIVADO PUERTORRIQUEÑO, DERECHO DE FAMILIA, 303 (1993). Por otra parte, aunque nuestra jurisprudencia no ha adoptado expresamente esta acción, según reconocimos en <u>Castro Torres v. Negrón Soto</u>, *supra*, sí ha manifestado, como explicamos antes, una clara tendencia a equiparar la acción de impugnación del reconocimiento y la acción de impugnación de paternidad legítima.[15]

Esta tendencia se manifiesta también en la evolución de nuestros dictámenes sobre los términos para incoar ambas acciones. Cuando atendimos por primera vez la posibilidad de impugnar un reconocimiento voluntario, en <u>Alcaide v. Morales</u>, 28 DPR 278 (1920), resolvimos que el reconocedor contaba con un término de quince años para instar la acción de impugnación. Consideramos entonces que se trataba de una acción personal sin señalamiento de término especial de prescripción. Artículos 1864 del

---

[15] Hemos sostenido en varias ocasiones la relación entre las acciones de impugnación de reconocimiento y el honor y la intimidad de las personas, por lo cual no se trata de acciones públicas y sólo pueden instarse por aquellos que estén legalmente legitimados para ello. <u>Castro Torres v. Negrón Soto</u>, *supra*. En ese sentido hemos sostenido que pueden ejercitar estas acciones aquellos a quienes les perjudique la falsa filiación. Artículo 126 del Código Civil, 31 L.P.R.A. sec. 505; <u>Sánchez Encarnación v. Sánchez Brunet</u>, *supra*; <u>Almodóvar v. Méndez</u>, *supra*, en la pág. 264 n. 33; R. ORTEGA-VÉLEZ, *supra*, en la pág. 409. Tomando en cuenta lo anterior, nuestro ordenamiento jurídico ha reconocido legitimación activa al reconocedor, al propio reconocido, de manera indirecta, cuando reclama una filiación incompatible y a los herederos, conforme lo establecido en el artículo 116 del Código Civil sobre las personas que pueden impugnar la paternidad legítima. <u>Sánchez Encarnación v. Sánchez Brunet</u>, *supra*; <u>Almodóvar v. Méndez</u>, *supra*.

Código Civil de Puerto Rico, 31 LPRA sec. 5294. Siete décadas más tarde, en <u>Almodovar v. Méndez Román</u>, 125 DPR 218 (1990), al reinterpretar la norma de <u>Alcaide</u> a la luz de la normativa constitucional vigente, decidimos establecer un único plazo común de tres meses para instar cualquiera de las acciones impugnatorias, con el propósito principal de evitar poner en una situación de incertidumbre jurídica extendida a las personas cuya filiación se había determinado por la vía del reconocimiento voluntario. De esa forma, aseguramos el derecho de todos los hijos a ser tratados en igualdad de condiciones.

En <u>Almodovar</u>, abordamos las diferencias entre la impugnación del reconocimiento voluntario y la impugnación de la paternidad matrimonial y señalamos que cuando se impugna un reconocimiento voluntario **por vicios en el consentimiento** "...queda por completo al margen la cuestión de si el reconocido es o no hijo del reconocedor." <u>Almodóvar</u>, *supra*, en la pág. 244. Explicamos que el objetivo de esa acción es demostrar que se fue intimidado o violentado, o inducido a error al prestar el consentimiento. Por esa razón, no será necesario referirse "al asunto de la filiación del reconocido." *Id.* Ahora bien, recalcamos que otra cosa era poder demostrar "la no paternidad":

> Por supuesto que quien demuestra que reconoció al hijo por creerlo suyo, y no lo es, prueba su error, pero prueba también la no paternidad, **prueba ésta que bastaría por sí sola.** *Id.*, énfasis nuestro.

Es necesario puntualizar que en <u>Almodóvar</u> se impugnó el reconocimiento **por vicios en el consentimiento**. En esas acciones, como allí apuntamos, sobran las pruebas

biológicas. Además, los señalamientos de <u>Almodóvar</u> sobre el reconocimiento voluntario sólo pretendían ilustrar sobre las semejanzas y diferencias entre la acción de impugnación de paternidad matrimonial y la acción para impugnar la paternidad derivada de reconocimiento, para poner en contexto lo que realmente se estaba cuestionando, que era el tiempo que tenía el reconocedor para impugnar el reconocimiento.

En 1994, resolvimos el caso de <u>Oaks v. Reyes</u>, 135 DPR 898 (1994), en una breve sentencia que fue utilizada por el foro apelativo como fundamento para la sentencia que revisamos en esta Opinión. En ese caso, el padre impugnó el reconocimiento voluntario de una niña producto de una relación extramarital, aduciendo, que "tenía dudas" sobre la paternidad biológica de la niña. Resolvimos que el verdadero propósito de la demanda era impugnar la validez del acto de reconocimiento realizado por el demandante, por lo cual éste debía demostrar que dicho reconocimiento estaba viciado por razón de violencia, intimidación o error. Concluimos que debía posponerse "cualquier otra acción hasta tanto el demandante haga una demostración al respecto. **No resulta suficiente el meramente alegar que tiene dudas sobre si la niña es su hija.**" *Id.*, en la pág. 899, énfasis nuestro. Por esa razón, revocamos la decisión del foro de instancia de ordenar pruebas de paternidad. [16] La

---

[16] En una corta opinión concurrente, la entonces Jueza Asociada Naveira Merly expuso que "tener dudas" sobre la paternidad "no es uno de los fundamentos para impugnar." En ese contexto señaló, en lo pertinente que: "La acción de impugnación de reconocimiento procede cuando hay prueba de que el reconocimiento realizado fue nulo porque adolecía de uno de los vicios... Cuando no hay vicios en el reconocimiento de un hijo tenido fuera del matrimonio, ese reconocimiento es irrevocable, **porque sería contrario**

sentencia así dictada no abordó los señalamientos de la doctrina española y no atendió las disposiciones de nuestro Código Civil en materia de impugnación. [17]

Algunos años más tarde, en Castro Torres v. Negrón Soto, *supra*, abordamos nuevamente la impugnación del reconocimiento voluntario. En ese caso, el promovente Negrón Soto impugnó el reconocimiento hecho voluntariamente, alegando que no era el padre biológico del menor. Las pruebas de histocompatibilidad ordenadas por el foro de instancia lo excluyeron como padre biológico del menor. Eventualmente, el esposo de la madre del menor solicitó intervenir alegando que era el verdadero padre biológico. Nuestra intervención se desenvolvió en el marco de la controversia suscitada respecto a la legitimación activa del presunto padre biológico para impugnar el reconocimiento voluntario de Negrón Soto.

Al revisar la doctrina y la jurisprudencia sobre filiación, reconocimiento y las acciones impugnatorias, reconocimos en Castro Torres, *supra* que la impugnación

---

**a la política pública arrepentirse.**" Oaks, supra, en la pág. 900-901, énfasis nuestro.

[17] Por otra parte, debemos recordar que "la sentencia es la forma que utiliza el Tribunal para disponer lo más rápidamente posible del enorme número de casos que tiene que resolver. Sólo intenta resolver la controversia entre las partes. Por eso es que los jueces de instancia no deben fundar sus fallos en dichas sentencias." Figueroa Méndez v. Tribunal Superior, 101 DPR 859, 863 (1974). Asimismo hemos reiterado que "se considerará que no es apropiado citar como autoridad o precedente las sentencias que no constituyen opinión del Tribunal. Bajo esta perspectiva se entiende por qué una sentencia sin opinión, cuya publicación no ha sido ordenada por este Tribunal y que ha sido publicada por razón de que un Juez de este Tribunal ha certificado una opinión concurrente o disidente o un voto particular, no tiene valor de precedente y sí el valor persuasivo intrínseco de sus fundamentos." Rivera Maldonado v. ELA, 119 DPR 74, 80 (1987).

del reconocimiento por vicios en el consentimiento no es la única aceptada por la doctrina. Repasamos entonces, someramente, los tres tipos de acciones que la doctrina española reconoce para impugnar el reconocimiento, es decir, la acción que se basa en la nulidad absoluta, la que impugna el reconocimiento por vicios en el consentimiento y la que lo impugna por no coincidir con la realidad. Señalamos entonces que esta última vía de impugnación "no ha sido adoptada en nuestro ordenamiento jurídico." Sin embargo, también expresamos que:

> ...si bien el vínculo biológico no es el único factor al momento de determinar la filiación de una persona, **se advierte un nuevo giro en la doctrina legal cuyo objetivo es tratar, en lo posible, de que la realidad biológica coincida con la realidad jurídica.** Esto es, que las personas posean una filiación jurídica con aquellos que biológicamente sean sus padres. <u>Castro Torres v. Negrón Soto</u>, *supra* en la pág. 9, énfasis en el original.

No podemos concluir este análisis de las distintas vertientes de la impugnación del reconocimiento sin examinar ciertas disposiciones de nuestro Código Civil, pertinentes al tema y, sin embargo, muy poco atendidas en la jurisprudencia. Están vigentes en dicho cuerpo de normas dos artículos matizados o derogados en parte por leyes especiales, por nuestra Constitución de 1952 y por nuestra jurisprudencia. [18] Los artículos señalados se refieren, en lo pertinente, a los requisitos para ser considerado "hijo natural" y a la acción para impugnar el

---

[18] *Véanse* las leyes Número 17 de 20 de agosto de 1952, Número 243 de 12 de mayo de 1945 y Número 229 de 12 de mayo de 1942, así como la Const. ELA, art. II sec. 1, que establece que todos los seres humanos son iguales ante la ley y que "no podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas." *Véanse* además <u>Ocasio v. Díaz</u>, 88 DPR 676 (1963); <u>Pabón v. Morales,</u> 79 DPR 154 (1956), <u>Matías v. Rodríguez,</u> 79 DPR 14 (1956) y <u>Figueroa v. Diaz</u> 75 DPR 163 (1953).

reconocimiento de quien no cumpla con estos requisitos. Artículos 125 y 126 del Código Civil, 31 LPRA secs.504 y 505 (2003).[19]

Estas normas tenían su equivalente en el Código Civil español, previo a la reforma de derecho de familia de 1981[20]. La doctrina española entendía entonces que los reconocimientos voluntarios podían impugnarse si el reconocido no era "hijo natural" del reconocedor, es decir, si el hijo no era, primeramente, hijo biológico de quien lo reconocía y en segundo lugar, si no se cumplían los requisitos sobre posibilidad de matrimonio al momento de la concepción.[21] Tratándose de disposiciones equivalentes, lo mismo podía decirse de la impugnación

---

[19] En su parte pertinente, el artículo 126 dispone: "El reconocimiento hecho a favor de un hijo que no reúna las condiciones del párrafo primero del artículo 125 podrá ser impugnado por aquellos a quienes perjudique." A su vez, el artículo 125 establece que son hijos naturales "los nacidos, fuera de matrimonio, de padres que al tiempo de la concepción de aquellos hubieran podido casarse, sin dispensa o con ella."

[20] En 1981 se llevó a cabo en España una extensa reforma al Código Civil en materia de derecho de familia. La misma se hizo posible a través de la Ley de 13 de mayo de 1981, que tenía la intención de atemperar el Código Civil a la nueva Constitución Española de 1978. El anterior artículo 138 del Código Civil Español establecía que: "El reconocimiento hecho a favor de un hijo que no reúna las condiciones del párrafo segundo del artículo 119, o en el cual se haya faltado a las prescripciones de ésta sección, podrá ser impugnado por aquellos a quienes perjudique." A su vez el artículo 119 establecía que: "Sólo podrán ser legitimados los hijos naturales. Son hijos naturales los nacidos de padres que al tiempo de la concepción de aquellos pudieron casarse sin dispensa o con ella."

[21] Véase MANUEL DE ALBALEDEJO, EL RECONOCIMIENTO DE LA FILIACIÓN NATURAL 181-206 (1954), quien explica ampliamente esta posición y enumera ejemplos de los demás países civilistas que comparten la misma. Véanse además 4 LUIS DÍEZ-PICAZO Y ANTONIO GULLÓN, SISTEMA DE DERECHO CIVIL, DERECHO DE FAMILIA Y DERECHO DE SUCESIONES, 348 (1978); IV-2 JOSÉ PUIG BRUTAU, DERECHO DE FAMILIA 89-91 (1970); FEDERICO PUIG PEÑA, TRATADO DE DERECHO CIVIL ESPAÑOL 139 (1971).

del reconocimiento bajo nuestro artículo 126, previo a la reforma comenzada en 1942.

Ahora bien, los artículos 125 y 126 del Código Civil de Puerto Rico deben ser interpretados a la luz de la Ley Número 229 de 12 de mayo de 1942, ya que ésta redefine "hijos naturales" como todos "los hijos nacidos fuera del matrimonio", haciendo abstracción de cualquier otra condición, 31 LPRA sec. 501 (2003). Según Vázquez Bote, *supra*, en la pág. 303, esto significa que la impugnación del reconocimiento dispuesta en el artículo 126 sólo tendría sentido hoy si el reconocimiento se hiciere "con respecto a una persona con la que el recognoscente carece de lazos biológicos."

La continuada vigencia de los artículos 125 y 126 del Código Civil, en el contexto de la reforma de la filiación comenzada en 1942, desemboca lógicamente en la interpretación propuesta por el profesor Vázquez Bote. Acorde a ésta, previo a la Ley 229, *supra*, ser hijo biológico y además hijo de padres que pudieran casarse al momento de la concepción eran las dos condiciones necesarias para la configuración del estado de "hijo natural" y la ausencia de cualquier de ellas podía conllevar la impugnación del reconocimiento. Como la segunda condición ya no es relevante en nuestro ordenamiento, queda únicamente la primera como fundamento para la impugnación. Esto significa, en definitiva, que nuestro ordenamiento permite que la filiación derivada de un reconocimiento voluntario sea impugnada por no coincidir con la realidad biológica.

V.

Examinemos ahora la doctrina relacionada a las pruebas de histocompatibilidad en las acciones de impugnación de reconocimiento.

De entrada es necesario recalcar que "que el estado actual de las investigaciones científicas aplicables a la determinación de la paternidad no guarda relación alguna con los medios disponibles con que contaba el legislador decimonónico para producir las leyes relacionadas a la paternidad y la filiación." Ruth E. Ortega Vélez, La Filiación: Apuntes y Jurisprudencia 74 (1997). Al tanto de estas nuevas realidades, este Tribunal ha flexibilizado considerablemente el uso de pruebas científicas para demostrar la verdadera relación biológica en casos de filiación.

En Ortiz v. Peña, 108 DPR 458 (1979) reconocimos la importancia y confiabilidad de las pruebas científicas para realizar una determinación negativa de paternidad. De esa forma, no se aíslan los tribunales de la realidad social contemporánea que responde a la especialización tecnológica: "En el campo de la investigación científica se orienta hacia el descubrimiento y la demostración de fenómenos diversos que a fuerza de repetida corroboración, logran alcanzar el status de hechos o verdades científicamente comparables." Id en la pág. 462.

En esa opinión dispusimos esencialmente que los tribunales pueden, a iniciativa propia, o deben, ante moción de parte, ordenar pruebas de sangre para establecer que un individuo no es el padre biológico de determinada persona. El resultado de las pruebas estará sujeto al escrutinio del juzgador, quien considerará si

éstas se hicieron cuidadosamente por expertos y si fueron adecuadamente supervisadas. <u>Ortiz v Peña</u>, *supra* en la pág. 469.

Unos años después resolvimos que también sería admisible cualquier prueba, incluyendo la científica, dirigida a impugnar la paternidad derivada de la presunción *juris tantum* por razón de matrimonio dispuesta en el artículo 113 del Código Civil, 31 LPRA sec. 461 (2003). De esa manera, señalamos que "[n]o existe impedimento para que la prueba sobre 'imposibilidad física del marido hacia su mujer' comprenda **cualesquiera otra** de carácter idóneo y concluyente de la imposibilidad de paternidad del marido." <u>Moreno Álamo v. Moreno Jiménez,</u> 112 DPR 376, 387 (1982), énfasis nuestro. Respondimos así a la necesidad de trascender la interpretación literal del mencionado artículo, en abono del verdadero espíritu que en materia filiatoria rige en Puerto Rico.

En <u>Calo Morales v. Cartagena</u>, 129 DPR 102 (1991), señalamos el impacto de los adelantos científicos sobre nuestra doctrina. Expusimos entonces que:

> Apenas se reflexione sobre la naturaleza de nuestro sistema de impugnación de la presunción de paternidad legítima, podrá observarse el cambio (reflejado en nuestra jurisprudencia) de un sistema legislativo cerradísimo para la impugnación de paternidad, a uno más flexible y abierto a los adelantos científicos.." *Id.* en la pág. 115.

Es por esta trayectoria que los estudiosos en la materia han percibido que este Tribunal ha adquirido "conciencia científica" en los asuntos relativos a la filiación. ORTEGA-VÉLEZ, *supra*, en la pág. 79. Hoy adelantamos un paso en ese camino.

No hay en nuestra normativa constitucional o estatutaria disposición alguna que impida utilizar las pruebas de ADN como medio de prueba en los tribunales. La jurisprudencia que hemos repasado demuestra que nuestro derecho probatorio ha admitido con liberalidad el uso de las pruebas biológicas en Puerto Rico. De igual forma hemos permitido libremente impugnar la filiación matrimonial. Además, se ha legislado concretamente para que se pueda presentar prueba biológica en aquellos casos en los que la paternidad sea un hecho pertinente, al enmendarse la Regla 82 de Evidencia, 32 LPRA Ap. II, R.82, para establecer que: **"en cualquier acción en que la paternidad sea un hecho pertinente, el tribunal podrá, a iniciativa propia, o deberá, a moción de parte oportunamente presentada, ordenar a la madre, hijo o hija y al presunto padre o alegado padre biológico a someterse a exámenes genéticos"**(énfasis nuestro).[22]

Se observa que esta regla ordena las pruebas de sangre cuando la paternidad es un hecho pertinente a la resolución de la controversia. Nótese que no distingue entre las acciones de impugnación o las acciones de reclamación de paternidad, más bien es clara en cuanto a la aplicación general de su mandato. Debemos destacar, por tanto que desde el punto de vista del derecho probatorio no existe ninguna disposición que proscriba el

---

[22] Bajo esta disposición el legislador hizo suyas nuestras expresiones de <u>Ortiz v. Peña</u>, supra, en la pág. 469, donde señalamos que "en cualquier acción en la que la paternidad sea un hecho pertinente, el tribunal puede, a iniciativa propia, y deberá a moción de parte oportunamente presentada, ordenar a la madre, hijo o hija y al alegado padre a someterse a exámenes de sangre. Los exámenes deberán ser hechos por peritos, debidamente calificados, nombrados por el tribunal. Antes de admitirse en evidencia el tribunal se cerciorará que los exámenes se han llevado a cabo siguiendo las más estrictas normas exigidas para esta clase de análisis."

uso de pruebas biológicas en casos de filiación. Por el contrario, estas pruebas son permitidas y hasta recomendadas cuando es pertinente determinar la filiación.[23]

En todo lo anterior, nuestra trayectoria, tanto jurisprudencial como legislativa, es compatible con la doctrina española. Ésta, según hemos explicado, es unánime en cuanto al papel desempeñado por el elemento biológico en la filiación y en que la ciencia facilita hoy día la búsqueda de la verdad para determinar la filiación.[24]

Hemos observado que este Tribunal ha adoptado el principio denominado "de veracidad" siempre que hemos abordado temas de filiación. Ello no obstante, también hemos afirmado el interés público en brindar certeza al estado filiatorio de los ciudadanos. Por esa razón, en Calo Morales v. Cartagena Calo, *supra*, sostuvimos la razonabilidad de los plazos de caducidad breves para acciones de impugnación del reconocimiento. Encontramos que el legislador logró proteger el interés apremiante en la estabilidad del estado filiatorio al establecer un plazo breve y de caducidad para ejercer la acción.

---

[23] En Rivera Pérez v. León, 138 DPR 839, (1995), le dimos una interpretación amplia a esta regla al resolver que procedía realizar pruebas biológicas a los hijos de un padre putativo ya fallecido, para determinar si eran hermanos de un menor que reclamaba su paternidad. Resolvimos que la expresión "hijo o hija" utilizada en la Regla 82(C) "...debe incluir a los hijos biológicos de un alegado padre (fallecido)." *Id.* en la pág. 849.

[24] Véase el artículo 127 del Código Civil Español que en su parte pertinente dispone: "En los juicios sobre filiación será admisible la investigación de la paternidad y de la maternidad mediante toda clase de pruebas, incluidas las biológicas."

En efecto, si bien hemos reconocido la importancia de la seguridad jurídica en materia de filiación, en cuanto incide sobre la identidad jurídica y sicológica de toda persona,[25] y adoptado una política pública en contra del arrepentimiento, también hemos recalcado la necesidad preponderante de determinar la verdadera filiación biológica.[26] Ambas políticas públicas igualmente apremiantes se reconcilian en la limitación del término para impugnar el reconocimiento a partir de nuestra decisión en Almodóvar.

La conjunción de los antedichos principios de derecho nos obligan a concluir que las pruebas de sangre son admisibles y pertinentes cuando se impugna un reconocimiento voluntario por no coincidir éste con la realidad biológica. Al arribar a esta conclusión pesa en nuestro ánimo la convicción de que el elemento básico de la filiación es la realidad biológica, que la validez de un reconocimiento está vinculado a la veracidad del mismo y que en nuestro ordenamiento jurídico impera una política pública sobre la búsqueda de la verdad en cuanto a la filiación. También resulta pertinente a nuestra determinación que el término para instar las acciones de impugnación de reconocimiento, es de caducidad y relativamente breve.[27]

---

[25] Véase Castro Torres v. Negrón Soto, 2003 TSPR 90, Almodóvar v. Méndez, 125 DPR 218, 260 (1991); Santiago v. Cruz Maldonado, 109 DPR 143, 146 (1979).

[26] Calo Morales v. Cartagena 129 DPR 102 (1991)Moreno Alamo v. Moreno Jiménez, 112 DPR 376 (1982).

[27] Según explicáramos antes, en los ordenamientos jurídicos civilistas como el nuestro reconocen una acción de impugnación de reconocimiento voluntario por inexactitud, es decir, por falta de veracidad. En España dicha acción caduca al año del reconocimiento. Véase MANUEL ALBALADEJO GARCÍA, EL RECONOCIMIENTO DE LA FILIACIÓN NATURAL

Entendemos, pues, que para que coexistan ambas políticas públicas, es decir el principio de veracidad y la seguridad del estado filiatorio, procede liberalizar la búsqueda de la verdad mientras aún esté vigente el breve plazo de tres meses para impugnar el reconocimiento. Es decir, consideramos que la política pública contra el arrepentimiento se protege precisamente por lo corto del plazo para impugnar un reconocimiento. Al mismo tiempo, se salvaguarda la política pública a favor de la búsqueda de la verdad al facilitar los medios para descubrirla antes de transcurrir dicho plazo.

Por todo lo anterior, aceptamos la vigencia en nuestro ordenamiento de la figura de la impugnación de reconocimiento por inexactitud o falta de veracidad. Ahora bien, la referida impugnación tiene que estar fundada en alegaciones específicas que, dándolas como ciertas, tiendan a demostrar a satisfacción del juzgador que existe una verdadera duda sobre la exactitud de la filiación derivada del reconocimiento voluntario.

Resolvemos que según dispone la Regla 82 de Evidencia, *supra*, los tribunales deben ordenar las pruebas de sangre cuando se impugne un reconocimiento voluntario por inexactitud y se solicite dicha orden. Atemperamos así nuestro derecho de filiación a los tiempos modernos. Cabe señalar que lo anterior no es óbice para que los tribunales puedan velar por el mejor interés de las partes, sobretodo de los menores, evitando la radicación de demandas frívolas que ocupan

218 (1954), III-1 Manuel Albaladejo, Comentarios al Código Civil y Compilaciones Forales, 895-930 (Manuel de la Cámara Álvarez, autor del comentario)(1984); IV Luis Díez-Picazo y Antonio Gullón, Sistema de Derecho Civil (7ma ed. 1997); II Ignacio Sierra Gil de la Cuesta, Comentario del Código Civil, Arts. 90 al 332, 387 (Ramón García Varela, autor del comentario)(2000).

innecesariamente el tiempo y recurso de los tribunales; que conllevan gastos de parte de los demandados y que pueden causar un gran desasosiego e inestabilidad en nuestra sociedad, en específico, en nuestra niñez. Dentro de su discreción, el Tribunal deberá regular el uso de las pruebas, para evitar que sean utilizadas con la intención de causar daño a las partes o dilación en los procedimientos.

Aclarado lo anterior, resolvemos que no erró el foro de instancia al ordenar las pruebas de histocompatibilidad en este caso. Se revoca la sentencia recurrida y se confirma en vez la resolución del Tribunal de Primera Instancia.

Se dictará sentencia de conformidad.


                              Liana Fiol Matta
                              Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Antonio Luis Mayol

    Peticionario

       v.

                                       Certiorari

Ana Ixa Torres, por sí y en
representación de su hijo
Fabián Andrés Mayol Torres

    Recurridos                              CC-2002-367


SENTENCIA

En San Juan, Puerto Rico, a 8 de abril de 2005.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, resolvemos que no erró el foro de instancia al ordenar las pruebas de histocompatibilidad en el presente caso. Se revoca la sentencia recurrida y se confirma la resolución del Tribunal de Primera Instancia.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López y la Jueza Asociada señora Rodríguez Rodríguez concurren sin opinión escrita.


                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo