EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Johnny González Rosado<br><br>Peticionario<br><br>v.<br><br>Yahaira Echevarría Muñiz<br><br>Recurrida | Certiorari<br><br>2006 TSPR 176<br><br>169 DPR \_\_\_\_ |

Número del Caso: CC-2004-940

Fecha: 21 de noviembre de 2006

Tribunal de Apelaciones:

Región Judicial de Aguadilla – Panel VI

Juez Ponente:
Hon. Guillermo Arbona Lago

Abogado de la Parte Peticionaria:

Lcdo. Iván Crespo Arroyo

Abogadas de la Parte Recurrida:

Lcda. Sylvia E. Pérez Arocho
Lcda. Vanessa M. Rafols Sallaberry

Materia: Impugnación de Paternidad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Johnny González Rosado

    Peticionario

        v.                      CC-2004-940

Yahaira Echevarría Muñiz

    Recurrida

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 21 de noviembre 2006

La controversia en este caso se circunscribe a cuando comienza a transcurrir el término de caducidad de la acción para impugnar un reconocimiento voluntario de paternidad, debido a su inexactitud. Resolvemos que dicho plazo corre desde el acto de reconocimiento.

## I

No están en controversia los hechos que dan lugar al recurso de autos. Johnny González Rosado, el peticionario, y Yahaira Echevarría Muñiz, la recurrida, sostuvieron relaciones sexuales mientras compartían una relación sentimental. Durante el año 2001, la recurrida quedó embarazada e informó al

peticionario que el hijo sería suyo. En vista de ello, la pareja estableció su hogar en la casa del peticionario. El 17 de abril de 2002, la peticionaria dio a luz, y siete días después, el 24 de abril de 2002, el peticionario inscribió al recién nacido como hijo suyo en el Registro Demográfico (el "Registro").

Las partes se realizaron una prueba de paternidad el 3 de noviembre y recibieron su resultado el 3 de diciembre de 2002. Ésta sugirió que el Sr. González Rosado no podía ser progenitor del menor a quien había inscrito. Consecuentemente, el peticionario impugnó su acto de reconocimiento voluntario mediante una demanda presentada el 19 de febrero de 2003, casi diez meses a partir de la inscripción del menor en el Registro.

El Tribunal de Primera Instacia desestimó la referida demanda a raíz de una moción de desestimación presentada por la parte recurrida, y con el beneficio de una vista celebrada para discutir dicha solicitud. Resolvió que la acción sobre impugnación de reconocimiento voluntario había caducado al transcurrir tres meses contados desde el acto de reconocimiento sin presentarse la misma. Concluyó, además, que no se había demostrado la presencia de error, violencia o intimidación en el acto de reconocimiento.

El peticionario acudió sin éxito al Tribunal de Apelaciones. Allí imputó dos errores al foro de instancia: (1) resolver que sólo con una demanda se evita la caducidad de una acción para impugnar un reconocimiento voluntario, (2) determinar que no se probó la presencia de error en el acto

de reconocimiento. Sin embargo, el foro *a quo* confirmó la sentencia apelada. Concluyó que una acción impugnatoria del reconocimiento voluntario caduca cuando no se presenta en los tribunales durante los tres meses a partir de la inscripción.[1]

Inconforme, el peticionario acudió oportunamente ante nosotros. Acusa la comisión de sendos errores, análogos a los que llevó ante el Tribunal de Apelaciones, *viz.*, resolver que la acción de impugnación debe formularse inicialmente ante un foro judicial para ser válida, y que el reconocimiento impugnado no ocurrió "bajo error o intimidación." Sostiene, en particular, que a pesar de haber impugnado extra-judicialmente su paternidad ante la recurrida, dentro de los tres meses siguientes a la inscripción, no pudo tener certeza sobre el error dentro de ese término. Ello debido a que las pruebas de paternidad precisan de un sujeto con al menos tres meses de edad, según le informaron; que el menor estuvo enfermo una vez cumplió dicha edad; y que el resultado de la prueba tardó un mes en llegar.

## II

### A

La filiación es aquel estado civil de la persona determinado por "la situación que, dentro de una familia, le asigna el haber sido engendrada en ella o el estar en ella en virtud de la adopción o de otro hecho legalmente suficiente

---

[1] El foro apelativo no se expresó con respecto al segundo error señalado, por entender, *inter alia*, que era innecesario.

al efecto." *Castro Torres v. Negrón Soto*, res. 23 de mayo de 2003, 159 D.P.R. \_\_\_, 2003 T.S.P.R. 90.  Se trata de un vínculo jurídico que establece una amplia gama de derechos y obligaciones, cuya trascendencia es innecesario recalcar.

La filiación es una relación fundamentalmente jurídica que responde a ciertos imperativos de política pública.  El primero es recoger y reglamentar los vínculos biológicos entre las personas.  Por eso hemos indicado que dichos vínculos son los criterios básicos de la filiación, esto es, que sus normas han sido diseñadas para lograr una correspondencia entre los vínculos biológicos y los jurídicos.[2]  A modo de ejemplo, la presunción de paternidad aplicable al cónyuge de una madre refleja, entre otras cosas, el supuesto empírico de que los hijos de una mujer casada suelen ser hijos de su marido.  Más allá de esta función epistemológica, hemos reconocido que se debe procurar, en lo posible, una coincidencia entre la realidad biológica y la jurídica.  *Castro Torres v. Negrón Soto*, *ante*.

Ahora bien, no es la filiación un desenfrenado culto a la biología, sino que responde, también, a ciertos intereses de los particulares y de la comunidad.  En especial, existe un gran interés en la estabilidad de aquellos derechos y obligaciones derivados de la filiación.  Ello procura evitar, entre otras cosas, que la cuestión filiatoria permanezca

---

[2] Véase entre otros, I. Cortero Cutrillas, *La impugnación de la paternidad matrimonial*, Publicaciones de la Universitat Jaume I, 2001, capt. 1; M. Pena Bernardo de Quirós, *Derecho de familia, Derecho de sucesiones*, Publicaciones de la Facultad de Derecho, Universidad Complutense, Madrid, 1989, págs. 439 y ss; L. Díez Picazo, A. Gullón, *Sistema de Derecho civil*, Ed. Tecnos, Madrid, 5ta ed., 1989, vol. IV, pág. 247.

abierta indefinidamente, en perjuicio de quien aparece como hija y podría ser víctima de los conflictos conyugales entre los supuestos padres. A tal imperativo de estabilidad jurídica responden las normas que establecen presunciones, imponen términos perentorios de caducidad para la impugnación de las constancias filiatorias del Registro Demográfico, e insisten en estrictos requisitos de legitimación activa. Así, la relación biológica no es una condición necesaria ni suficiente de la relación filial.[3]

Lo expuesto implica que las normas filiatorias reflejan una determinación de política pública sobre el balance apropiado de los intereses reseñados. Hacemos hincapié en ello para velar contra la tentación de suponer anticuadas o formalistas aquellas normas que no responden al criterio biológico. Pues no se trata aquí de rechazar la verdad en pro de la mentira, sino de entender que la realidad biológica es sólo parte de la verdad, y no siempre la más justa.

**B**

Existen dos vías principales hacia la filiación paternal: la matrimonial y la extramatrimonial. De una parte, se presume hijo del cónyuge varón a quien nació bajo

---

[3] No siempre la filiación jurídica ha de coincidir con la biológica. Sobre este particular se ha señalado: "La primera [la jurídica] es mucho más rica y compleja que el mero dato o lazo biológico en cuanto categoría jurídica y social que es y en la que se integran componentes metajurídicos, elementos varios: volitivos, afectivos, sociales, formales. Destacan en ella, además, unos importantes roles que la sociedad y el Derecho confieren a los protagonistas de dicha relación, donde lo funcional y lo social tienen a veces mayor trascendencia que el mero elemento natural o biológico." J. Rams Albesa, R. Moreno Flórez, *Comentarios al Código Civil II*, Ed. Bosch, Barcelona, 2000, vol. 2.º, pág. 1077.

las siguientes circunstancias: (1) dentro de los 180 días de celebrarse el matrimonio, si el marido no impugna su paternidad; (2) déspues del referido plazo y durante el matrimonio; (3) antes de los 300 días a partir de la disolución del matrimonio. Artículos 113 y 114 del Código Civil, 31 L.P.R.A. §§ 461 y 462; *Calo Morales v. Cartagena Calo*, 129 D.P.R. 102 (1991).[4]

La filiación extramatrimonial, a su vez, queda establecida mediante el reconocimiento forzoso o voluntario. *Castro Torres v. Negrón Soto*, *ante*. En el segundo escenario, se entiende por reconocimiento "aquella declaración hecha por ambos padres (o por uno de ellos aisladamente), por cuya virtud acreditan que una persona es hija suya, siempre que ello se haga en las condiciones y mediante las formas prescritas por las leyes." F. Puig Peña, *Compendio de Derecho Civil Español*, Ed. Pirámide S.A., Madrid, vol. V, pág. 394. Véase, *Almodóvar v. Méndez Román,* 125 D.P.R. 218, 249 n. 15. Véase además, Herrera Campos, La filiación no matrimonial tras la reforma del Código Civil de 13 de mayo de 1981, 1983 *Rev. D. Priv.* 3, 12. La doctrina española describe los caracteres del reconocimiento de la siguiente manera: "Resulta incuestionable el principio legal y jurisprudencial que atribuye al reconocimiento de paternidad los caracteres de acto unilateral, personalísimo, formal y

---

[4] Añadimos en *Castro Torres v. Negrón Soto*, res. 23 de mayo de 2003, 159 D.P.R. ___, 2005 T.S.P.R. 90, que "[l]os Arts. 119 a 122 del Código Civil permiten que el subsiguiente matrimonio de los progenitores convierta la filiación que inicialmente fue extramatrimonial en una matrimonial para todos los efectos y respecto a todas las personas." (Citando a 31 L.P.R.A. §§ 481-484.)

sobretodo **irrevocable; [. . .] perdiendo su fuerza legal únicamente si se acredita que se ha incurrido en un vicio de la voluntad.**"  STS 27 de octubre de 1993 (Ar. 7664) (énfasis nuestro); Herrera Campos, *ante*, pág. 13; Puig Peña, *op. cit.*, pág. 401 ("[El reconocimiento de un hijo, por ser] la confesión de un hecho, lógicamente es, como toda confesión, irrevocable y una vez hecha no puede arbitrariamente retirarse.")  Véase además, J. Rams Albesa, R. Moreno Flórez, *Comentarios al Código Civil II*, Ed. Bosch, Barcelona, 2000, vol. 2.°, págs. 1227-1232.  El efecto del reconocimiento voluntario es una presunción de paternidad con efectos análogos a la filiación matrimonial. *Castro Torres v. Negrón Soto*, *ante*.

### III

Debemos repasar las acciones dirigidas a impugnar la filiación, tanto matrimonial como extramatrimonial.  Un supuesto progenitor, entre otros, tiene derecho a impugnar la presunción de filiación matrimonial.  Dicha acción tiene dos modalidades.  Primero, el marido puede cuestionar su paternidad y demostrar que el hijo nació dentro de los 180 días de celebrarse el matrimonio o después de los 300 días a partir de su disolución.  Se trata aquí de un ataque dirigido a la presunción *per se*, tendiente a eliminarla, y no al nexo biológico.  Por otro lado, el marido o ex-marido puede establecer que no existe tal nexo, arremetiendo directamente contra la paternidad.  Ambas modalidades las reconocimos en *Almodóvar v. Méndez Román*, *ante,* pág. 242 (citas omitidas):

A su vez esta impugnación de la paternidad del

marido ha sido clasificada y distinguida por la doctrina en impugnación o desconocimiento riguroso de la paternidad y la denominada impugnación, o desconocimiento simple de ella. Bástenos con decir que en la primera corresponde al marido atacar la presunción legal produciendo prueba que descarte el nexo biológico. En la segunda, ha de negar la filiación probando que el hijo de su mujer nació en los primeros ciento ochenta días del matrimonio, o después de los trescientos días de la disolución del matrimonio.

En cambio, nuestra jurisprudencia ha tenido claro que la acción impugnatoria correspondiente a la filiación extramatrimonial es una figura encaminada a desvirtuar, no la paternidad *per se*, sino el acto de reconocimiento voluntario. En *Almodóvar v. Méndez Román, ante*, sostuvimos que, aún cuando el efecto real de la impugnación es eliminar el estado filiatorio establecido, es innecesario impugnar directamente la condición de hijo. Pues, lo que se pretende anular es el acto mismo del reconocimiento. Incluso, citamos el criterio de Bossert en cuanto a que "[n]o hay acción de impugnación de la paternidad extramatrimonial, aunque pueda existir la acción de impugnación del reconocimiento." *Almodóvar,* págs. 241-242. Igual criterio acogimos en *Mayol v. Torres*, res. 8 de abril de 2005, 163 D.P.R. ___, 2005 T.S.P.R. 45, al distinguir la 'impugnación' de la 'revocación':

La impugnación, sin embargo, es un supuesto distinto, que se refiere no a un acto de voluntad contradictorio, sino a la acción de cuestionar en los tribunales la validez y efectividad jurídica del acto de voluntad original, por fundamentos jurídicos aceptados por el ordenamiento. Así, el principio de irrevocabilidad prohíbe al reconocedor invalidar su propia declaración anterior, o sea, arrepentirse, mientras la acción para impugnar un reconocimiento voluntario tiene como objeto que el estado deje sin efecto una filiación extramatrimonial legalmente establecida.

En fin, hemos caracterizado las acciones impugnatorias como unas encaminadas a desvirtuar un reconocimiento voluntario para dejar sin efecto determinado estado filiatorio. Véase, también: M.D. Díaz-Ambrona Bardají, F. Hernández Gil, *Lecciones de Derecho de Familia*, Editorial Centro de Estudios Ramón Areces, S.A., Madrid, 1999, pág. 412 ("Hay que resaltar que lo que se impugna es el reconocimiento, independientemente de que el reconocedor sea en realidad padre o madre biológicos.")

En el contexto del reconocimiento voluntario, un vicio por error se configura mediante cierta disparidad entre la realidad y el entender de quien reconoce. Nos dice el Tribunal Supremo español que error es "el falso conocimiento de la realidad, capaz de dirigir la voluntad a la emisión de una declaración no efectivamente querida." STS 21 de mayo de 1963. Así, Díaz-Ambrona Bardají y Hernández Gil, *op. cit.*, pág. 412, han identificado dos modalidades del mismo, a saber: "a) por ignorancia, por no tener conocimiento exacto de la realidad, y b) por creer como ciertas determinadas circunstancias que no lo son."

Las definiciones citadas sugieren que el reconocimiento de quien se tiene por hija, y no lo es, podría constituir un error viciante. Sin embargo, antes de *Mayol v. Torres*, *ante*, nuestra jurisprudencia contenía expresiones tendientes a rechazar esa conclusión.[5] De ahí que resolviéramos en *Oaks*

---

[5] Las siguientes expresiones de *Almodovar v. Méndez Román,* 125 D.P.R. 218, 261-262 (1990), son ilustrativas:

En cuanto a este punto específico, conviene recordar lo expresado a esos efectos en el citado

*Reyes v. Ortiz Aponte*, 135 D.P.R. 898 (1994), por vía de sentencia, que el reconocedor demandante debía probar un vicio del consentimiento antes de ordenarse las pruebas de paternidad. Ello ante una escueta demanda cuyas alegaciones se referían vagamente a las dudas del reconocedor sobre su paternidad.

Es en tal contexto normativo y procesal que surge *Mayol v. Torres*, *ante*, donde establecimos una acción impugnatoria del reconocimiento voluntario debido a su inexactitud. El efecto de esta norma es permitir que un presunto progenitor impugne su reconocimiento voluntario mediante la ausencia del vínculo biológico, sin necesidad de probar otro vicio del consentimiento (*e.g.*, su esterilidad al ocurrir la concepción). Amén de ello, señalamos que los tribunales debían ordenar las correspondientes pruebas de paternidad, siempre que el solicitante alegara con especificidad los hechos que provocan sus dudas. Explicamos que dichas normas establecen un mejor balance de los intereses en conflicto,

_____

caso de *Alcaide v. Morales*, *ante*, y, en adición, unas palabras del Tribunal Supremo de España a los efectos de que es preciso que el error alegado 'se compruebe y derive de hechos transcendentales que afecten directa y notoriamente [a] la creencia equivocada en que pudo estar el padre de que la madre sólo de él pudo concebir, sin que sea lícito de otro modo la suposición del error, pues equivaldría [a] autorizar un arrepentimiento y cambio de voluntad, que es en absoluto incompatible con las condiciones de permanencia de todo estado civil, permanencia que afecta al interés social y consiguientemente al orden público . . . '. S. de 25 de junio de 1909, Núm. 93, 115 Jurisprudencia Civil 499.

**haciendo énfasis en el breve plazo de caducidad aplicable a las acciones impugnatorias**.

Ahora bien, la acción independiente de impugnación por inexactitud no deja de estar vinculada íntimamente con el concepto del error.  Debemos recordar que todas las acciones impugnatorias se dirijen a desvirtuar el acto de reconocimiento.  Y como expresamos en *Mayol*, dichas acciones se distinguen de la revocación, precisamente, porque **no pretenden viabilizar un "acto de voluntad contradictorio."** *Mayol*, a*nte.*

## IV

### A

La figura de la caducidad participa de una construcción estrictamente jurisprudencial al margen de textos legales, tanto bajo nuestro ordenamiento como el español.  Su razón de ser es, principalmente, evitar la persistencia de incertidumbre de una relación o situación jurídica.  En tal sentido, la caducidad "atiende a fines sociales relevantes, lo que le da cierto carácter de orden público."  Rivero Hernández, ¿Apreciación de oficio de la caducidad en todo caso? Necesidad de un régimen diferente para las relaciones jurídicas e intereses disponibles, 2001 *Rev. D. Priv.* 465, 480.

El objeto de la caducidad --es decir lo que caduca-- son los derechos potestativos o de modificación jurídica.  Aquí la jurisprudencia y normativa española nos presenta una madeja de posibilidades.  La figura en cuestión se aplica a una variedad de situaciones, relaciones, acciones y derechos,

entre los cuales destacan los retractos de colindantes, comuneros y coherederos, así como el derecho de tanteo. Aplica también a acciones rescisorias, tanto las de contratos en general como las derivadas de la lesión y de la partición hereditaria. *Íbid,* págs. 480-481. Finalmente, aplica a las llamadas acciones de estado, que comprenden desde la filiación hasta las de nulidad de matrimonio.

La caducidad filiatoria no admite interrupción. Así ocurre, incluso, en el ordenamiento español, el cual ha desteñido la figura. Un examen de los dictámenes de ese tenor evidencian que, aun cuando se han "admitido excepciones y flexibilidad . . . **no hay, . . . ningún caso que afecte a relaciones o acciones sobre estado civil de las personas** —respecto de las que la caducidad es típica e indiscutida desde la primera hora— **en que haya ocurrido lo mismo."** (Énfasis nuestro.) *Íd.,* págs. 485-486. La jurisprudencia que así dispone "ha destacado que no se puede dejar el control de estos procesos ni la prueba de la real filiación al juego del principio dispositivo propio del proceso civil en nuestro sistema jurídico." *Loc. cit. E.g.,* T.C. 120/1984, 10 de diciembre; STS 21 de mayo de 1988 (Ar. 6543); STS 21 de septiembre de 1999 (Ar. 6949). Véase además, R. Bercovitz, Comentario sentencia T.S. 30 de mayo de 1984, *C.C.J.C.,* 1984, pág. 1824, citado en Rivero Hernández, *ante,* pág. 487 ("La caducidad responde al deseo del legislador de que una situación de incertidumbre no se pueda prolongar, por lo que es apreciada de oficio. Ello se debe frecuentemente a una defensa del orden público, **como ocurre en las acciones**

**relacionadas con el estado civil de las personas y materias afines**.") (Énfasis nuestro). Véase también, STS 30 de abril de 1940 (Ar. 304); STS 25 junio de 1962 (Ar. 3051); STS 26 de septiembre de 1997 (Ar. 6613).

**B**

El término para instar una acción sobre impugnación del reconocimiento voluntario es de caducidad. Véase, *Ortiz Rivera v. Suc. González Martínez*, 93 D.P.R. 562 (1966); *Texidor Díaz v. Tribunal Superior*, 94 D.P.R. 666 (1967). Véase además, G. Velásquez, La extinción de la acción de filiación en el Derecho Puertorriqueño, 17 *Rev. C. Abog. P.R.* 237 (1957). Del mismo modo se entiende en la doctrina española. A. Álvarez Caperochipi, *Curso de Derecho de familia*, Ed. Civitas, S.A., 1988, Vol. II, pág. 139. En *Almodóvar, ante*, establecimos el *dies a quo* del mismo. Cuando se trata de la violencia o la intimidación, el plazo de caducidad transcurre desde el momento en que cesan dichas circunstancias. *Almodóvar, ante*, pág. 261. Cuando, por otro lado, la impugnación del reconocimiento obedezca a un error, "el término de caducidad de tres meses necesariamente debe contarse desde la fecha en que se llevó a cabo el reconocimiento." *Loc. cit.*

Varias consideraciones nos convencen que la acción de impugnación por inexactitud debe estar sujeta a un plazo idéntico. Hemos visto, en primer lugar, que la filiación matrimonial puede soslayarse mediante dos acciones, una dirigida a impugnar la paternidad y otra a impugnar la presunción. Empero, sea cual fuera la modalidad instada,

nuestra jurisprudencia establece claramente que existe un solo término de caducidad para impugnar la presunción de filiación matrimonial correspondiente a una hija nacida dentro del matrimonio. Al respecto, vale la pena citar de nuestra Opinión en *Almodóvar v. Méndez Román*, *ante*:

> Como sabemos, por virtud de las disposiciones del citado Art. 117 del Código Civil, el marido tiene el término de tres meses desde la inscripción del nacimiento, si se hallaba en Puerto Rico, y el término de seis meses desde que tuvo conocimiento del nacimiento, si se hallaba fuera de Puerto Rico, para radicar la acción de impugnación de legitimidad. Ello tiene la consecuencia de que **el niño que nace de mujer casada consolida su estado filiatorio respecto de su padre al transcurrir dichos períodos de tres o seis meses**, pues pasado 'el mismo' su *status familiae* resulta ser inatacable por el padre por razón de haber caducado la acción que a esos efectos la ley le concede a éste.

*Ante*, a las págs. 252-253 (Énfasis suplido). Obsérvese como, en ambos casos, el término de caducidad y su *dies a quo* son idénticos.

Por otro lado, hemos visto que la decisión en *Mayol v. Torres*, *ante*, no pretendió descartar toda afinidad entre las acciones de impugnación por error e inexactitud, sino establecer un balance más adecuado de los intereses en conflicto. Tratándose, pues, de dos acciones muy parecidas, cabe aplicarles el mismo plazo de caducidad. Máxime cuando la brevedad de éste fue una de las consideraciones que incidió poderosamente en el balance de intereses efectuado.

Finalmente, debemos puntualizar la importancia que supone la certeza en la fijación del término de caducidad. En tal sentido se ha indicado:

El plazo de caducidad para impugnar los estados

civiles claudicantes debe computarse siempre **desde la misma fecha. De lo contrario se prolonga durante márgenes temporales inciertos la falta de firmeza del estado civil impugnable, lo que no es aconsejable, pues razones de seguridad jurídica exigen plazos de impugnación cortos y bien determinados. De poco sirve que el plazo de caducidad sea breve si no se sabe cuál va a ser el día que marca el comienzo del cómputo.** (Énfasis nuestro.)

M. de la Cámara Álvarez, *Reflexiones sobre la filiación ilegítima en Derecho español*, Ed. Tecnos, Madrid, 1975, pág. 105. Nuestra decisión no sostiene la tesis de que la paternidad jurídica es preferible a la biológica. Más bien, se quiere evitar que la filiación se torne en "un semillero de impugnaciones, muchas de ellas maliciosas, . . . [frente al] mal que pueda suponer que haya alguien que aparezca como hijo del que posiblemente no lo generó." M. Albaladejo, *El reconocimiento de la filiación natural*, Ed. Bosch, Barcelona, 1954, pág. 8.

Conviene añadir que la posibilidad de investigar con métodos científicos la paternidad biológica, no es incompatible ni detracta de la importancia que reviste para el ordenamiento que los plazos que inciden sobre las relaciones de familia sean unos de caducidad.[6] En este

---

[6] Adviértase que el Art. 39 de **la Constitución de España de 1978 le confirió rango constitucional al derecho a la investigación de la paternidad.** El artículo lee de la siguiente manera: "La Ley posibilitará la investigación de la paternidad." De esta forma, el texto de la Constitución dio por terminado el sistema legal prevaleciente hasta entonces en el Código Civil de prohibir la investigación de la paternidad. El texto constitucional además, declaró la igualdad de todos los hijos. En cumplimiento con este mandato constitucional se dictó la Ley 11/1981, de 13 de mayo, que modificó el Código civil en materia de filiación, patria potestad y régimen económico del matrimonio. "La redacción actual del artículo 127 del Código civil es fruto

aspecto, resulta relevante la STS 14 de marzo de 1994 (Ar. 1777) que dice:

> Es cierto que la Ley permite la investigación biológica de la filiación y paternidad, pero también lo es que no ha introducido en nuestro sistema una investigación indiscriminada, perturbadora del orden interno familiar y contraria al estado civil y posesión de hecho del mismo que gozan las personas. **La Ley apoya la verdad material, pero a favor de los hijos y de la familia, no como elemento distorsionador del orden interno por ello limita el círculo de los legitimados, plazo de caducidad de las acciones.** (Énfasis nuestro.)

Es decir, que independientemente de la importancia que reviste la investigación biológica --la cual en España goza de rango constitucional-- no cabe soslayar los términos de caducidad para instar la correspondiente acción de impugnación de reconocimiento.

La posición que hoy acogemos establece el balance más justiciero respecto los variados intereses que matizan esta controversia. Es decir, entre la finalidad que persigue la investigación sobre la paternidad que es, la adecuación de la verdad jurídica-formal a la verdad biológica, frente a los valores trascendentales de la protección de la familia en general y las hijas e hijos en particular, así como el de la seguridad jurídica en el estado civil de las personas.

---

de esta reforma, declarando la investigación de la maternidad y de la paternidad, admitiendo para ello toda clase de pruebas, incluso las biológicas." M.D. Díaz-Ambrona Bardají, F. Francisco Gil, *Lecciones de Derecho de Familia*, Editorial Centro de Estudios Ramón Areces, S.A., Madrid, 1999, pág. 400.

**V**

Dada la normativa expuesta, el presente recurso nos presenta una controversia relativamente sencilla. El peticionario impugnó su reconocimiento voluntario mediante una demanda presentada casi diez meses a partir del mismo. El plazo de caducidad aplicable era de tres meses y comenzó a correr desde el acto de reconocimiento. Dicho término era inmune a la interrupción extrajudicial. Por ende, debemos concluir que la acción impugnatoria ha caducado.[7]

**VI**

Por todo lo anterior, se expide el auto solicitado y se confirma la determinación del Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

---

[7] Cabe recordar que ello no priva al menor de su posible causa de acción filiatoria *vis-a-vis* un tercero, --el alegado padre biológico, quien no es parte en este litigio-- acorde con lo que resolvimos en *Sánchez Encarnación v. Sánchez Brunet*, 154 D.P.R. 645 (2001).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Johnny González Rosado

    Peticionario

       v.                          CC-2004-940

Yahaira Echevarría Muñiz

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 21 de noviembre 2006

Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se dicta sentencia confirmando la determinación del Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Fuster Berlingeri emitió opinión de conformidad y disidente. La Jueza Asociada señora Fiol Matta emitió una opinión disiente.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Johnny González Rosado

    Peticionario


       vs.                   CC-2004-940     Certiorari

Yahaira Echevarría Muñiz

    Recurrida



Opinión de Conformidad y Disidente emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.


San Juan, Puerto Rico, a 21 de noviembre de 2006.


Estoy conforme con el dictamen de la mayoría del Tribunal en cuanto a que la acción judicial para impugnar un reconocimiento voluntario de filiación, **por incompatibilidad con la realidad biológica**, debe estar sujeta a un breve plazo de caducidad de tres meses, que es el mismo plazo que fija el Código Civil para la acción de impugnación de la llamada filiación matrimonial. Ello, además, en vista de que en Almodóvar v. Méndez Román, 125 D.P.R. 218 (1990), este Tribunal resolvió que en virtud de la Constitución del Estado Libre Asociado de Puerto Rico, sólo puede existir en nuestro ordenamiento

jurídico un único plazo para incoar acciones que procuran la impugnación del estado o condición de "hijo", *Id,* a las págs. 256-257. Tal plazo protege la estabilidad jurídica de la constancia filiatoria.

Con lo que no estoy conforme es con la camisa de fuerza que dispone la mayoría del Tribunal en su opinión sobre **cuándo** comienza a transcurrir el plazo aludido. Resuelve la mayoría que el breve término **debe contarse desde la fecha en que se llevó a cabo el reconocimiento**. Ello significa, en el caso de autos, que el padre jurídico que aquí impugnó su anterior acto de reconocimiento voluntario, tenía que realizar tal impugnación **antes de conocer la razón que lo motivó a realizarla**. En términos prácticos, por un lado se establece jurídicamente el derecho a impugnar y por toro lado se hace imposible ejercer ese derecho.

No explica la mayoría del Tribunal ningún modo claro ni convincente por qué no debe adoptarse aquí la juiciosa norma española sobre el particular. En el ordenamiento español, el plazo en cuestión comienza a transcurrir a partir del momento en que **se conoce** la realidad biológica que motiva la acción de impugnación. Ello significa en efecto que el plazo para incoar la acción en cuestión comienza a correr desde que se conocen los resultados de las pruebas científicas de paternidad. Se trata de una norma sencilla, precisa, objetiva y justa, que evita las ominosas dificultades judiciales de la norma que decreta la mayoría del Tribunal en su opinión.

Es concebible que en casos extremos la aplicación de la norma española pueda ser adversa al interés social en la estabilidad de las determinaciones filiatorias. Sin embargo, esa posible consecuencia es de mucho menor rango que la alternativa de mantener un estado civil basado en la falsedad y el engaño. No debe olvidarse que el fin primordial que se persigue en este asunto es la consecución de la verdad. Como bien reconocimos en nuestra decisión en Mayol v. Torres, res. el 8 de abril de 2005, 164 D.P.R. ___, 2005 TSPR 45, 2005 JTS 50, la acción de impugnación que aquí nos concierne tiene su raíz en el "principio de veracidad": que la paternidad jurídica se fundamente en la filiación biológica. Reiteramos allí que en el pensamiento jurídico moderno se preconiza aquella investigación de la paternidad que tiene como objeto "abrir caminos a través de los prejuicios y los tecnicismos legales para hacer que **brille la verdad** y se reconozca a todos los fines legales la **relación biológica** entre padres e hijos." No debemos ahora dar al traste con esta alta valoración de la verdad, convirtiendo en la práctica el descubrimiento de la realidad biológica en un acto estéril, que no puede tener consecuencias jurídicas afines.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Johnny González Rosado

    Peticionario

                                 CERTIORARI

           v.                    CC-2004-940

Yahaira Echevarría Muñiz

    Recurrida

Opinión Disidente emitida por la JUEZA ASOCIADA SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 21 de noviembre de 2006.

En _Mayol v. Torres_, 2005 T.S.P.R. 45, 2005 J.T.S. 50, reconocimos la vigencia en nuestro ordenamiento de la acción de impugnación de la filiación por inexactitud, sin embargo no establecimos el plazo para ejercitarla. Por entender que el _dies a quo_ de esta acción es distinto al que establece la Mayoría de este Tribunal y que la acción del peticionario podría no estar prescrita, disiento.

La demanda presentada por el peticionario en este caso pretendía impugnar un reconocimiento voluntario de filiación alegando vicios en el consentimiento. El Tribunal de Primera Instancia determinó, correctamente, que el peticionario no demostró que en el acto del reconocimiento medió

error, violencia o intimidación como requiere nuestra jurisprudencia. *Véase* <u>Almodóvar v. Méndez</u>, 125 D.P.R. 218 (1990).[8]

Sin embargo, por sus alegaciones en cuanto a la paternidad biológica del menor, el peticionario tiene disponible la acción de impugnación de filiación por inexactitud, que reconociéramos en el caso de <u>Mayol v. Torres</u>, *supra*. Valga recordar que en ese caso no sólo reconocimos esta acción, sino que señalamos que la misma estaba sujeta a un plazo de caducidad. En nuestra decisión no tuvimos oportunidad de precisar el término para ejercitar la acción ni la fecha o el evento a partir del cual empieza a transcurrir el plazo de caducidad, es decir, el *dies a quo* de esta acción.[9] En la Opinión mayoritaria que hoy emite este Tribunal se establece que el término para ejercitar la acción de impugnación por inexactitud comienza a decursar desde el acto de reconocimiento de la filiación. No estoy de acuerdo. Por el contrario, considero que esta decisión restringe excesivamente el derecho a impugnar y cambiar una realidad jurídica inexacta.

---

[8] El peticionario no ha colocado a este Tribunal en posición de evaluar si el foro de instancia actuó con prejuicio o error manifiesto, de modo que pudiera intervenir con esta conclusión. Por otra parte, según hemos aseverado por años en nuestra jurisprudencia, la alegación del peticionario de que inscribió al niño porque la recurrida le indicó que si no lo hacía antes de que pasaran 10 días del nacimiento le impondrían una multa penal no constituye ni error, ni violencia o intimidación que vicie el reconocimiento del menor que hizo voluntariamente. *Véase* <u>Almodóvar v. Méndez</u>, *supra*; <u>Sánchez Encarnación v. Sánchez Brunet</u>, 2001 T.S.P.R. 107, 2001 J.T.S. 112.

[9] Si bien hicimos referencia al "breve plazo de tres meses" para impugnar el reconocimiento como elemento de la política pública contra el arrepentimiento. <u>Mayol v. Torres</u>, 2005 T.S.P.R. 45, pág. 34; 2005 J.T.S. en la pág. 1090.

I.

El peticionario circunscribió su argumentación al efecto interruptor de la impugnación extrajudicial sobre el término para incoar la acción de impugnación. En la Opinión mayoritaria se establece sin más que la caducidad filiatoria no admite interrupción. Sin embargo, si bien esto es cierto **como norma genera**l, un análisis de los contornos jurídicos de la caducidad o la decadencia como se le conoce en la doctrina francesa e italiana nos lleva a matizar esa conclusión. Veamos.

A pesar de su larga historia dentro del Derecho Civil, la caducidad ha estado carente de regulación en el Código Civil, por lo cual resulta ser una figura jurídica algo enigmática, aún en nuestros días. Han sido la jurisprudencia y la doctrina quienes han delineados sus contornos, y lo han hecho mayormente en función de la prescripción. *Véase* M. García Amigo, <u>Instituciones de Derecho Civil</u>, Madrid, Editorial de Derecho Reunidas, 1979, pág. 907; J. Puig Brutau, <u>Caducidad, prescripción extintiva y usucapión</u>, Barcelona, Bosch, 1988, pág. 47. La caducidad se produce cuando la ley o la voluntad de las partes fijan un término para ejercitar un derecho – sea el cumplimiento de un acto, el ejercicio de una reclamación o el ejercicio de una acción judicial – de modo que una vez transcurrido el término, la parte interesada queda impedida de ejercer su derecho o de realizar el acto. F. Bonet Ramón, <u>Compendio de Derecho Civil</u>, Madrid, Editorial Revista de Derecho Privado, Tomo I, 1959, pág. 774. En otras palabras, la caducidad surge cuando se impone la observancia de un término perentorio para el ejercicio de un derecho. D. Espín Cánovas, <u>Manual de Derecho Civil español</u>, Vol. 1, Madrid, Editorial de

Derecho Reunidas, 1982, pág. 569. Se trata, pues de un término fatal a partir del nacimiento del derecho, dentro del cual éste se debe ejercitar. *Véase* García Amigo, *op. cit.*, pág. 907.

La caducidad se aplica, por lo general, a facultades o poderes jurídicos cuyo fin es promover un cambio en una situación legal. Su propósito es reforzar el estado de derecho pre-existente. Ortiz Rivera, et. al. v. Sucn. de Manuel González Martínez, 93 D.P.R. 562, 570, 574 (1966). Por esta razón, la caducidad suele establecer un término de vida corto a los derechos que protege. Es por esos mismos fundamentos que los plazos de caducidad no admiten, **como norma general**, causas de interrupción; sino que las acciones deben ser ejercitadas dentro del tiempo hábil de manera exitosa para que no caduquen. J.L. Lacruz Berdejo, A. Luna Serrano, F. Rivero Hernández, Elementos de Derecho Civil I- Volumen tercero, Barcelona, Bosch, 1990, pág. 375; García Amigo, *op. cit.*, pág. 907; D. Espín Cánovas, *op. cit.*, pág. 568.

No obstante, la jurisprudencia española y los tratadistas reconocen que la caducidad puede quedar interrumpida por casos fortuitos o por hechos independientes a la voluntad de quien debe ejercer la acción, o por causas ajenas al tenedor del derecho o cuando el ordenamiento jurídico exige que antes de la presentación de la demanda se efectúen ciertos actos administrativos. *Véase* Lacruz Berdejo, *op. cit.*, pág. 380; García Amigo, *op. cit.*, pág. 908; sentencias del Tribunal Supremo de España del 23 de diciembre de 1983, del 8 de noviembre de 1983, del 8 de septiembre de 1983, y del 25 de mayo de 1965. *Cf.* M. Albaladejo, Derecho Civil I-Volumen segundo, Barcelona, Bosch, 1989, § 108, pág. 535. En otras palabras, el

ordenamiento jurídico español ha comenzado a reconocer que al tenedor de un derecho sujeto a un término de caducidad no se le puede penalizar cuando eventos fuera de su control no le han permitido realizar, dentro del término establecido, el acto exigido para reivindicar su derecho. Tampoco se puede penalizar al tenedor del derecho cuando éste ha iniciado su acción dentro del término de vida de su derecho pero no ha terminado, por causas ajenas a su voluntad, todo el trámite requerido dentro de ese término.  Esta posición es muy acertada, ya que permite preservar el estado de derecho pre-existente al mismo tiempo que protege aquellos que no pudieron actuar por razones fuera de su control o que fueron diligentes en iniciar los trámites para reivindicar sus derechos dentro de los términos de las acciones sujetas a la caducidad.

Por otra parte, el tipo de acción que se requiere para entender que se está ejercitando el derecho sujeto a un plazo de caducidad depende de la voluntad de las partes o de la ley, y puede ser el cumplimiento de un acto, el ejercicio de una reclamación o el ejercicio de una acción judicial. Nuestra regulación civil reconoce, en varias instancias, que el ejercicio de un derecho sujeto a un término de caducidad no es necesariamente por medio de la vía judicial.  Por ejemplo, el derecho del poseedor de un enjambre de abejas ajeno a retenerlo u ocuparlo, si el propietario no lo persigue en dos días, está sujeto a un término de caducidad según la doctrina. *Véase* Art. 552 del Código Civil, 31 L.P.R.A. § 1953 (1993); Puig Brutau, *op. cit.*, pág. 47; F. Bonet Ramón, *op. cit.,* pág. 776. Por la naturaleza de la acción, lo único que se requiere es que el tenedor del derecho persiga el enjambre o no lo haga en dos días para que se mantenga o mute el estado de derecho pre-existente;

no es necesario presentar una acción judicial.[10] Otro derecho cuyo ejercicio no requiere intervención judicial es el derecho al retracto convencional, que se puede exigir directamente al comprador. *Véase* Arts. 1396-1397 del Código Civil, 31 L.P.R.A. §§ 1396-1397 (1993). Así, el requisito de presentar una acción judicial dentro del término de caducidad lo determina la naturaleza del derecho.

En el caso de la acción para impugnar un reconocimiento voluntario de filiación o de la acción para impugnar una filiación matrimonial, el objeto de las acciones es que **el Estado** deje sin efecto una filiación legalmente establecida. Véase José Lacruz Berdejo, et. al., <u>Elementos de Derecho Civil</u>, Derecho de Familia, Barcelona, Bosch, 1997, 4ta. ed., pág. 512. Por lo tanto, en el caso de la impugnación de un reconocimiento voluntario de la filiación o de la impugnación de una filiación matrimonial, ya que se requiere un acto del Estado que ordene el cambio en la filiación,[11] la reivindicación del derecho sólo puede ser por la vía judicial. Además, la certidumbre sobre el estatus filiatorio de las personas que persigue nuestro ordenamiento sólo es asequible por la vía judicial.

El peticionario aduce, en síntesis, dos fundamentos para sustentar que su acción no había caducado. Primero, que no era necesario que la presentara ante un tribunal. En cuanto a esta contención, según antecede de nuestra

---

[10] De igual modo ocurre con el reclamo del propietario de animales amansados que han sido ocupados, que si no se reclaman luego de 20 días desde la ocupación pasan a ser propiedad del que los ocupó. *Id.* La naturaleza de la acción, la redacción del artículo y la época en la que se redactó nos indican que la reclamación de la que se habla no es una reclamación judicial sino que basta la reclamación y la búsqueda de los animales en el fundo ajeno.

[11] Aun si las partes se pusieran de acuerdo en cuanto al asunto necesitarían de la intervención judicial para poder efectuar el cambio en la filiación.

discusión, estimo que no le asiste la razón; debió presentar su acción de impugnación ante el Tribunal de Primera Instancia. Su segunda contención es que sus actos y sus requerimientos a la recurrida interrumpieron el período de caducidad. Respecto a esto entiendo que tampoco tiene razón.

Como expusiera, las acciones sujetas a términos de caducidad, por regla general, no son susceptibles de ser interrumpidas, a excepción de casos muy específicos en los que se permite la interrupción, a saber: 1. por la imposibilidad, ajena al tenedor del derecho, de ejercer su acción, o 2. por la diligencia del tenedor del derecho al cumplir con los actos que se le requieren como antesala a la presentación de la acción. Ante las circunstancias que presenta el peticionario sobre los eventos que alegadamente no le permitieron tener certeza en cuanto a su relación biológica con el menor, estimo que es cuestión de prueba que el tribunal de instancia debe dirimir. Una vez recibida y aquilatada la prueba, el tribunal debe entonces determinar si la situación del peticionario amerita la interrupción del término de caducidad para la acción de impugnación por inexactitud del reconocimiento voluntario de la filiación. Sin embargo, esto no es suficiente para adjudicar adecuadamente la controversia que se le ha presentado a este Tribunal, pues faltaría precisar el término dentro del cual se debe ejercitar la acción.

II.

La Opinión mayoritaria resuelve que la acción de impugnación por inexactitud debe estar sujeta a un plazo de caducidad idéntico al de la impugnación por reconocimiento voluntario, es decir, tres meses. Estoy de acuerdo con este pronunciamiento. Entiendo que mientras nuestra Asamblea Legislativa no provea para lo contrario,[12] la acción de impugnación de la filiación por inexactitud, sea para impugnar un reconocimiento voluntario o una filiación matrimonial, debe estar sujeta también a un plazo de caducidad de tres meses.

Ahora bien, la Opinión mayoritaria resuelve que el término de caducidad debe contarse necesariamente desde la fecha en que se llevó a cabo el reconocimiento. No comparto este criterio sobre el *dies a quo* del plazo para instar la acción. Debemos recordar que la caducidad no puede correr en contra de lo inexistente. Almodóvar v. Méndez, *supra*, pág. 261. Sólo desde el momento en que nace el derecho es que la caducidad puede operar y los términos comenzar a

---

[12] Es interesante notar que los legisladores italianos establecieron que la acción de impugnación de la filiación por inexactitud no prescribiría y que podría ser incoada por cualquier persona interesada en cualquier momento. La constitucionalidad de este artículo que establecieron los legisladores italianos fue impugnada en la década de los noventa, pero la legislación fue sostenida por el Tribunal Supremo Constitucional Italiano. *Véase* Sentenza N. 112, 9-22 aprile 1997, della Corte Costituzionale; Articolo 263 del Codice Civile Italiano.

El texto del artículo en italiano es el siguiente:

Art. 263 Impugnazione del riconoscimento per difetto di veridicità
Il riconoscimento può essere impugnato per difetto di veridicità dall'autore del riconoscimento, da colui che è stato riconosciuto e da chiunque vi abbia interesse.
L'impugnazione è ammessa anche dopo la legittimazione (280 e seguenti).
L'azione è imprescrittibile.

transcurrir. En otras palabras, este Tribunal debió determinar cuál es el evento específico que da paso al nacimiento de la acción de la impugnación de la filiación por inexactitud para poder saber cuándo es que caduca dicha acción, y no sujetarlo, sin más, al momento del reconocimiento voluntario.

Para poder determinar cuándo nace la acción de impugnación de la filiación por inexactitud hay que comprender qué intereses protege y de qué forma pretende hacerlo esta acción. Mediante la acción de impugnación por inexactitud se pretende contradecir el contenido mismo del reconocimiento, es decir, la existencia de nexo biológico entre el reconocedor (o aquel afectado por la presunción de la filiación matrimonial) y el reconocido. G.A. Bossert, Régimen Legal de Filiación y Patria Potestad: Ley 23.264, Buenos Aires, Astrea de A. Y R. De Palma, 2da. Ed., 1987, pág. 245. Como bien sostiene el Tribunal Supremo Constitucional de Italia, la acción de impugnación de la filiación por inexactitud está inspirada en el principio de orden superior que ninguna apariencia falsa de estado o derecho debe permanecer viva. Véase Senteza N. 158 del 1991, Sentenza N. 112 della Corte Costituzionale.

Sobre esta misma premisa es que este Tribunal ha ido actuando. En Castro Torres v. Negrón Soto, supra, advertimos que la doctrina legal estaba dando un nuevo giro en cuanto a la impugnación de la filiación, con el objetivo de tratar, en lo posible, de que la realidad biológica coincida con la realidad jurídica. Por eso, nuestro propósito al reconocer la acción de impugnación de la filiación por inexactitud en Mayol v. Torres, supra, fue el

promover que las personas posean una filiación jurídica con aquellos que biológicamente son sus padres.

No obstante, en Oaks v. Reyes, 135 D.P.R. 898, 899 (1994), sostuvimos que al solicitar pruebas genéticas para impugnar un reconocimiento voluntario no resulta suficiente el meramente alegar que se tienen dudas sobre la paternidad del menor. Asimismo, en Mayol v. Torres, *supra*, dejamos claro que para que el promovedor de la acción pueda presentar ante el tribunal su solicitud, ésta tiene que estar fundada en alegaciones específicas que, dándolas como ciertas, tiendan a demostrar a satisfacción del juzgador que existe una verdadera duda sobre la exactitud de la filiación derivada del reconocimiento voluntario. La verdadera duda sobre la realidad biológica es necesaria para la presentación de una acción de este tipo porque de otro modo se atentaría contra la seguridad jurídica y emocional que otorga la filiación jurídica pre-existente, y se socavaría la política pública que busca el bienestar de los menores y la consecución de la verdad. Además, se violarían los principios más elementales de la justicia, pues no se puede intentar cambiar un evento tan fundamental en la vida de las personas sin tener dudas claras y fuertes sobre la realidad en la que se basa, es decir, sobre la correspondencia entre la realidad biológica y la realidad legal. Siendo ello así, la acción de impugnación de filiación por inexactitud no puede nacer hasta que el impugnador tenga conocimiento o indicios confiables de la inexactitud biológica o conocimiento de hechos que puedan llevar a un juzgador a tener una duda verdadera sobre la exactitud de la filiación.

Este razonamiento fue el que llevó tanto al Tribunal Constitucional como al Tribunal de Casación de España a declarar en varias sentencias que el *dies a quo* del plazo para el ejercicio de la acción de impugnación de la filiación por inexactitud debe ser el momento en el cual  el

promovedor de la acción tuvo conocimiento de que no era el verdadero padre. También, los hizo moverse a reconocer que la verdad biológica prima sobre los formalismos de los términos en los códigos,[13] permitiendo de este modo que la verdad material prevalezca en muchos casos en los cuales ésta no hubiera prevalecido si se hubiera atendido el tenor literal de las normas codificadas. *Véase* Resolución N. 1140/2002, Sala 1ª de lo Civil, Tribunal de Casación, Sentencia 3-12-2002; Sentencia N. 825/2003, Sala de lo Civil, Tribunal Supremo; Sentencias del Tribunal de Casación de lo Civil 23-3-2001, y 30-1-1993; STS 12-06-2004; STS 15-10-2003. Tanta es la importancia que la jurisprudencia española contemporánea ha puesto sobre el conocimiento por parte del impugnador de la realidad biológica como requisito para que pueda ejercitar la acción de impugnación de la filiación por inexactitud que ha declarado que no se le puede exigir que la ejerza antes de que advenga en conocimiento de ese hecho y que el desconocimiento de la realidad biológica debe dar lugar a las mismas consecuencias que el desconocimiento del hecho del nacimiento cuando se impugna la filiación matrimonial. Por esta razón, el Tribunal Supremo Constitucional declaró inconstitucional el plazo para la impugnación de la paternidad matrimonial por inexactitud biológica que proveía la ley. *Véase* STC 138/2005, 26 de mayo de 2005; STC 156/2005, 9 de junio de 2005.

---

[13] El rechazo al formalismo en las nuevas tendencias jurisprudenciales españolas llevó al Tribunal Supremo a sostener que el seguir el formalismo de la ley e ignorar que el impugnador sólo puede llevar la acción cuando tiene conocimiento de la verdad biológica conllevaría instaurar por la ley situaciones de indefensión para el padre designado por la filiación y una clara injusticia. *Véase* Sentencia N. 825/2003, Sala de lo Civil, Tribunal Supremo; STS 12-06-2004, Sala Primera, Tribunal Supremo.

En otras palabras, nuestro homólogo español determinó que, al igual que en el caso de la filiación matrimonial, la acción de impugnación de la filiación por inexactitud no está sujeta al plazo de caducidad hasta el momento en que se conozca el hecho base en el que se sustenta. En el caso de la filiación matrimonial, ese hecho base es el nacimiento del menor, y en el caso de la acción por inexactitud biológica, el hecho base es la verdad biológica. De otro modo, se violaría el principio general de que los plazos comienzan a correr desde que el afectado pudo llevar la acción o conoció los hechos que justificaban su causa de acción, principio del cual hemos hecho uso en otras ocasiones para casos similares a éste. *Véase* Castro Torres v. Negrón Soto, 2003 T.S.P.R. 90, pág. 35; 2003 J.T.S. pág. 1091.

La norma española exige, pues, que se tenga conocimiento de la inexactitud biológica para que comience a transcurrir el periodo de caducidad. En nuestro caso, no creo prudente adoptar esa norma en toda su extensión. Más bien, el balance de intereses entre el derecho de un individuo a impugnar y cambiar una realidad jurídica inexacta, el derecho de las personas a la seguridad de su estado civil, y el interés del Estado en la estabilidad de las determinaciones filiatorias y las responsabilidades alimentarias, junto a la ausencia de acción legislativa para regular las acciones de impugnación de la filiación, nos constriñe a la adopción de una norma menos amplia. Además, actualmente la ciencia provee un método confiable para la comprobación de la paternidad cuya accesibilidad impone a quien dude o tenga razón para dudar de ésta una obligación de actuar con diligencia. Por esto, resolvería que para que el término de caducidad de la acción de impugnación de la

filiación por inexactitud comience a decursar no es necesario que el impugnador **conozca de la inexactitud biológica**. El término debe transcurrir a partir de que el impugnador tenga dicho conocimiento o **tenga indicios confiables de la inexactitud biológica** o **conozca de hechos que puedan llevar a un juzgador a tener una duda verdadera sobre la exactitud de la filiación, lo que ocurra primero.**

III.

Por todo lo anterior, revocaría la sentencia recurrida y devolvería el caso al Tribunal de Primera Instancia para que se continuaran los procedimientos bajo la acción de impugnación de reconocimiento por inexactitud que reconociéramos en el caso de <u>Mayol v. Torres</u>, *supra*. Correspondería a ese tribunal determinar desde qué momento el peticionario tuvo conocimiento o indicios confiables de la inexactitud biológica o conocimiento de hechos que pudieran llevar a un juzgador a tener una duda verdadera sobre la exactitud de la filiación, para luego resolver si en efecto la acción había caducado.


Liana Fiol Matta
Jueza Asociada