Opinión de conformidad y disidente emitida por el
Juez Asociado Señor Fuster Berlingeri.
Estoy conforme con el dictamen de la mayoría del Tribunal en cuanto a que la acción judicial para impugnar un reconocimiento voluntario de filiación, por incompatibilidad con la realidad biológica, debe estar sujeta a un breve plazo de caducidad de tres meses, que es el mismo que fija el Código Civil para la acción de impugnación de la llamada filiación matrimonial. Ello, además, en vista de que *573 en Almodóvar v. Méndez Román, 125 D.P.R. 218 (1990), este Tribunal resolvió que, en virtud de la Constitución del Estado Libre Asociado de Puerto Rico, sólo puede existir en nuestro ordenamiento jurídico un único plazo para incoar acciones que procuran la impugnación del estado o condición de “hijo”. íd., págs. 256-257. Tal plazo protege la estabilidad jurídica de la constancia filiatoria.
Con lo que no estoy conforme es con la camisa de fuerza que dispone la mayoría del Tribunal en su opinión sobre cuándo comienza a transcurrir el plazo aludido. Resuelve la mayoría que el breve término debe contarse desde la fecha cuando se llevó a cabo el reconocimiento. Ello significa, en el caso de autos, que el padre jurídico, que aquí impugnó su anterior acto de reconocimiento voluntario, tenía que realizar tal impugnación antes de conocer la razón que lo motivó a realizarla. En términos prácticos, por un lado se establece jurídicamente el derecho a impugnar y por toro lado se hace imposible ejercer ese derecho.
La mayoría del Tribunal no explica ningún modo claro ni convincente, por qué no debe adoptarse aquí la juiciosa norma española sobre el particular. En el ordenamiento español, el plazo en cuestión comienza a transcurrir a partir del momento en que se conoce la realidad biológica que motiva la acción de impugnación. Ello significa, en efecto, que el plazo para incoar la acción en cuestión comienza a transcurrir desde que se conocen los resultados de las pruebas científicas de paternidad. Se trata de una norma sencilla, precisa, objetiva y justa, que evita las ominosas dificultades judiciales de la norma que decreta la mayoría del Tribunal en su opinión.
Es concebible que en casos extremos la aplicación de la norma española pueda ser adversa al interés social en la estabilidad de las determinaciones filiatorias. Sin embargo, esa posible consecuencia es de mucho menor rango que la alternativa de mantener un estado civil fundamentado en la falsedad y el engaño. No debe olvidarse que el *574 fin primordial que se persigue en este asunto es la consecución de la verdad. Como bien reconocimos en nuestra decisión en Mayol v. Torres, 164 D.P.R. 517, 554 (2005), la acción de impugnación que aquí nos concierne tiene su raíz en el “principio de veracidad”: que la paternidad jurídica se fundamente en la filiación biológica. Reiteramos allí que en el pensamiento jurídico moderno se preconiza aquella investigación de la paternidad que tiene como objeto “abrir caminos a través de los prejuicios y los tecnicismos legales para hacer que brille la verdad y se reconozca a todos los fines legales la relación biológica entre padres e hijos”. Id., pág. 553. No debemos ahora dar al traste con esta alta valoración de la verdad, convirtiendo en la práctica el descubrimiento de la realidad biológica en un acto estéril, que no puede tener consecuencias jurídicas afines.