Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta.
En Mayol v. Torres, 164 D.P.R. 517 (2005), reconocimos la vigencia en nuestro ordenamiento de la acción de impugnación de la filiación por inexactitud, sin embargo no establecimos el plazo para ejercitarla. Por entender que el dies a quo de esta acción es distinto al que establece la Mayoría de este Tribunal y que la acción del peticionario podría no estar prescrita, disiento.
La demanda presentada por el peticionario en este caso pretendía impugnar un reconocimiento voluntario de filiación, alegando vicios en el consentimiento. El Tribunal de Primera Instancia determinó, correctamente, que el peticionario no demostró que en el acto del reconocimiento medió error, violencia o intimidación como requiere nuestra *575 jurisprudencia. Véase Almodóvar v. Méndez Román, 125 D.P.R. 218 (1990).(1)
Sin embargo, por sus alegaciones en cuanto a la paternidad biológica del menor, el peticionario tiene disponible la acción de impugnación de filiación por inexactitud, que reconociéramos en el caso Mayol v. Torres, supra. Valga recordar que en ese caso no sólo reconocimos esta acción, sino que señalamos que estaba sujeta a un plazo de caducidad. En nuestra decisión no tuvimos oportunidad de precisar el término para ejercitar la acción ni la fecha o el evento a partir del cual empieza a transcurrir el plazo de caducidad, es decir, el dies a quo de esta acción.(2) En la opinión mayoritaria que hoy emite este Tribunal se establece que el término para ejercitar la acción de impugnación por inexactitud comienza a transcurrir desde el acto de reconocimiento de la filiación. No estoy de acuerdo. Por el contrario, considero que esta decisión restringe excesivamente el derecho a impugnar y cambiar una realidad jurídica inexacta.
I
El peticionario circunscribió su argumentación al efecto interruptor de la impugnación extrajudicial sobre el término para incoar la acción de impugnación. En la opinión mayoritaria se establece sin más que la caducidad filiatoria no admite interrupción. Sin embargo, si bien esto es *576 cierto como norma general, un análisis de los contornos jurídicos de la caducidad o la decadencia —como se le conoce en la doctrina francesa e italiana— nos lleva a matizar esa conclusión. Veamos.
A pesar de su larga historia dentro del Derecho Civil, la caducidad ha estado carente de regulación en el Código Civil, por lo cual resulta ser una figura jurídica algo enigmática, aún en nuestros días. Han sido la jurisprudencia y la doctrina quienes han delineados sus contornos, y lo han hecho mayormente en función de la prescripción. Véanse: M. García Amigo, Instituciones de Derecho Civil, Madrid, Ed. Derecho Reunidas, 1979, pág. 907; J. Puig Brutau, Caducidad, Prescripción Extintiva y Usucapión, Barcelona, Ed. Bosch, 1988, pág. 47. La caducidad se produce cuando la ley o la voluntad de las partes fijan un término para ejercitar un derecho —sea el cumplimiento de un acto, el ejercicio de una reclamación o el ejercicio de una acción judicial— de modo que una vez transcurrido el término, la parte interesada queda impedida de ejercer su derecho o de realizar el acto. F. Bonet Ramón, Compendio de Derecho Civil, Madrid, Ed. Rev. Der. Privado, T. I, 1959, pág. 774. En otras palabras, la caducidad surge cuando se impone la observancia de un término perentorio para el ejercicio de un derecho. D. Espín Cánovas, Manual de Derecho Civil español, Madrid, Ed. Rev. Der. Privado, 1982, Vol. 1, pág. 569. Se trata, pues, de un término fatal a partir del nacimiento del derecho, dentro del cual éste se debe ejercitar. Véase García Amigo, op. cit, pág. 907.
La caducidad se aplica, por lo general, a facultades o poderes jurídicos cuyo fin es promover un cambio en una situación legal. Su propósito es reforzar el estado de derecho preexistente. Ortiz Rivera v. Sucn. González Martínez, 93 D.P.R. 562, 570, 574 (1966). Por esta razón, la caducidad suele establecer un término de vida corto a los derechos que protege. Es por esos mismos fundamentos que los plazos de caducidad no admiten, como norma general, causas *577 de interrupción, sino que las acciones deben ser ejercitadas dentro del tiempo hábil de manera exitosa para que no caduquen. J.L. Lacruz Berdejo, A. Luna Serrano y F. Rivero Hernández, Elementos de Derecho Civil I—Volumen tercero, Barcelona, Ed. Bosch, 1990, pág. 375; García Amigo, op. cit., pág. 907; Espín Cánovas, op. cit., pág. 568.
No obstante, la jurisprudencia española y los tratadistas reconocen que la caducidad puede quedar interrumpida por casos fortuitos, por hechos independientes a la voluntad de quien debe ejercer la acción, por causas ajenas al tenedor del derecho o cuando el ordenamiento jurídico exige que, antes de la presentación de la demanda, se efectúen ciertos actos administrativos. Véanse: Lacruz Berdejo, op. cit., pág. 380; García Amigo, op. cit., pág. 908; Sentencias del Tribunal Supremo de España de 23 de diciembre de 1983, de 8 de noviembre de 1983, de 8 de septiembre de 1983, y de 25 de mayo de 1965. Cf. M. Albaladejo, Derecho Civil, Barcelona, Ed. Bosch, 1989, T. I, Vol. 2, See. 108, pág. 535. En otras palabras, el ordenamiento jurídico español ha comenzado a reconocer que al tenedor de un derecho sujeto a un término de caducidad no se le puede penalizar cuando eventos fuera de su control no le han permitido realizar, dentro del término establecido, el acto exigido para reivindicar su derecho. Tampoco se puede penalizar al tenedor del derecho cuando éste ha iniciado su acción dentro del término de vida de su derecho pero no ha terminado, por causas ajenas a su voluntad, todo el trámite requerido dentro de ese término. Esta posición es muy acertada, ya que permite preservar el estado de derecho preexistente al mismo tiempo que protege aquellos que no pudieron actuar por razones fuera de su control o que fueron diligentes en iniciar los trámites para reivindicar sus derechos dentro de los términos de las acciones sujetas a la caducidad.
Por otra parte, el tipo de acción que se requiere para entender que se está ejercitando el derecho sujeto a un *578 plazo de caducidad depende de la voluntad de las partes o de la ley, y puede ser el cumplimiento de un acto, el ejercicio de una reclamación o el ejercicio de una acción judicial. Nuestra regulación civil reconoce, en varias instancias, que el ejercicio de un derecho sujeto a un término de caducidad no es necesariamente por medio de la vía judicial. Por ejemplo, el derecho del poseedor de un enjambre de abejas ajeno a retenerlo u ocuparlo, si el propietario no lo persigue en dos días, está sujeto a un término de caducidad según la doctrina. Véanse: Art. 552 del Código Civil, 31 L.P.R.A. see. 1953; Puig Brutau, op. cit., pág. 47; Bonet Ramón, op. cit., pág. 776. Por la naturaleza de la acción, lo único que se requiere es que el tenedor del derecho persiga el enjambre o no lo haga en dos días para que se mantenga o mute el estado de derecho preexistente; no es necesario presentar una acción judicial.(3) Otro derecho, cuyo ejercicio no requiere intervención judicial, es el derecho al retracto convencional, que se puede exigir directamente al comprador. Véanse los Arts. 1396-1397 del Código Civil, 31 L.P.R.A. sees. 1396-1397. Así, el requisito de presentar una acción judicial dentro del término de caducidad lo determina la naturaleza del derecho.
En el caso de la acción para impugnar un reconocimiento voluntario de filiación o de la acción para impugnar una filiación matrimonial, el objeto de las acciones es que el Estado deje sin efecto una filiación legalmente establecida. Véase J. Lacruz Berdejo et al., Elementos de Derecho Civil, 4ta ed., Barcelona, Ed. Bosch, 1997, pág. 512. Por lo tanto, en el caso de la impugnación de un reconocimiento voluntario de la filiación o de la impugnación de una filiación matrimonial, ya que se requiere un acto *579 del Estado que ordene el cambio en la filiación,(4) la reivindicación del derecho sólo puede ser por la vía judicial. Además, la certidumbre sobre el estatus filiatorio de las personas que persigue nuestro ordenamiento sólo es asequible por la vía judicial.
El peticionario aduce, en síntesis, dos fundamentos para sustentar que su acción no había caducado. Primero, que no era necesario que la presentara ante un tribunal. En cuanto a esta contención, según antecede de nuestra discusión, estimo que no le asiste la razón; debió presentar su acción de impugnación ante el Tribunal de Primera Instancia. Su segunda contención es que sus actos y sus requerimientos a la recurrida interrumpieron el período de caducidad. Respecto a esto entiendo que tampoco tiene razón.
Como expusiera, las acciones sujetas a los términos de caducidad, por regla general, no son susceptibles de ser interrumpidas, a excepción de casos muy específicos en los que se permite la interrupción, a saber: (1) por la imposibilidad, ajena al tenedor del derecho, de ejercer su acción, o (2) por la diligencia del tenedor del derecho al cumplir con los actos que se le requieren como antesala a la presentación de la acción. Ante las circunstancias que presenta el peticionario sobre los eventos que alegadamente no le permitieron tener certeza en cuanto a su relación biológica con el menor, estimo que es cuestión de prueba que el tribunal de instancia debe dirimir. Una vez recibida y aquilatada la prueba, el tribunal debe entonces determinar si la situación del peticionario amerita la interrupción del término de caducidad para la acción de impugnación por inexactitud del reconocimiento voluntario de la filiación. Sin embargo, esto no es suficiente para adjudicar adecuadamente la controversia que se le ha presentado a este Tribunal, pues *580 faltaría precisar el término dentro del cual se debe ejercitar la acción.
II
La opinión mayoritaria resuelve que la acción de impugnación por inexactitud debe estar sujeta a un plazo de caducidad idéntico al de la impugnación por reconocimiento voluntario, es decir, tres meses. Estoy de acuerdo con este pronunciamiento. Entiendo que mientras nuestra Asamblea Legislativa no provea para lo contrario,(5) la acción de impugnación de la filiación por inexactitud, sea para impugnar un reconocimiento voluntario o una filiación matrimonial, debe estar sujeta también a un plazo de caducidad de tres meses.
Ahora bien, la opinión mayoritaria resuelve que el término de caducidad debe contarse necesariamente desde la fecha cuando se llevó a cabo el reconocimiento. No comparto este criterio sobre el dies a quo del plazo para instar la acción. Debemos recordar que la caducidad no puede correr contra lo inexistente. Almodóvar v. Méndez Román, supra, pág. 261. Sólo desde el momento cuando nace el derecho es que la caducidad puede operar y los términos comenzar a transcurrir. En otras palabras, este Tribunal debió determinar cuál es el evento específico que da paso al nacimiento de la acción de la impugnación de la filiación *581 por inexactitud para poder saber cuándo es que caduca dicha acción, y no sujetarlo, sin más, al momento del reconocimiento voluntario.
Para poder determinar cuándo nace la acción de impugnación de la filiación por inexactitud hay que comprender qué intereses protege y de qué forma pretende hacerlo esta acción. Mediante la acción de impugnación por inexactitud se pretende contradecir el contenido mismo del reconocimiento, es decir, la existencia de nexo biológico entre el reconocedor (o aquel afectado por la presunción de la filiación matrimonial) y el reconocido. G.A. Bossert y E.A. Zannoni, Régimen legal de filiación y patria potestad: Ley 23.264, 2da reimp., Buenos Aires, Ed. Astrea, 1987, pág. 245. Como bien sostiene el Tribunal Supremo Constitucional de Italia, la acción de impugnación de la filiación por inexactitud está inspirada en el principio de orden superior de que ninguna apariencia falsa de estado o derecho debe permanecer viva. Véanse Senteza N. 158 del 1991 y Sentenza N. 112 della Corte Costituzionale.
Sobre esta misma premisa es que este Tribunal ha ido actuando. En Castro v. Negrón, supra, advertimos que la doctrina legal estaba dando un nuevo giro en cuanto a la impugnación de la filiación, con el objetivo de tratar, en lo posible, de que la realidad biológica coincida con la realidad jurídica. Por eso, nuestro propósito al reconocer la acción de impugnación de la filiación por inexactitud en Mayol v. Torres, supra, fue el promover que las personas posean una filiación jurídica con aquellos que biológicamente son sus padres.
No obstante, en Oaks Reyes v. Ortiz Aponte, 135 D.P.R. 898, 899 (1994), sostuvimos que, al solicitar pruebas genéticas para impugnar un reconocimiento voluntario, no resulta suficiente el meramente alegar que se tienen dudas sobre la paternidad del menor. Asimismo, en Mayol v. Torres, supra, dejamos claro que para que el promovedor de la acción pueda presentar ante el tribunal su solicitud, *582 ésta tiene que estar fundada en alegaciones específicas que, dándolas como ciertas, tiendan a demostrar a satisfacción del juzgador que existe una verdadera duda sobre la exactitud de la filiación derivada del reconocimiento voluntario. La verdadera duda sobre la realidad biológica es necesaria para la presentación de una acción de este tipo, porque de otro modo se atentaría contra la seguridad jurídica y emocional que otorga la filiación jurídica preexistente, y se socavaría la política pública que busca el bienestar de los menores y la consecución de la verdad. Además, se violarían los principios más elementales de la justicia, pues no se puede intentar cambiar un evento tan fundamental en la vida de las personas sin tener dudas claras y fuertes sobre la realidad en la que se fundamenta, es decir, sobre la correspondencia entre la realidad biológica y la realidad legal. Siendo ello así, la acción de impugnación de filiación por inexactitud no puede nacer hasta que el impugnador tenga conocimiento o indicios confiables de la inexactitud biológica, o el conocimiento de hechos que puedan llevar a un juzgador a tener una duda verdadera sobre la exactitud de la filiación.
Este razonamiento fue el que llevó tanto al Tribunal Constitucional como al Tribunal de Casación de España a declarar en varias sentencias que el dies a quo del plazo para el ejercicio de la acción de impugnación de la filiación por inexactitud debe ser el momento en el cual el promovedor de la acción tuvo conocimiento de que no era el verdadero padre. También, los hizo moverse a reconocer que la verdad biológica prima sobre los formalismos de los términos en los códigos,(6) permitiendo de este modo que la verdad material prevalezca en muchos casos en los cuales ésta *583 no hubiera prevalecido si se hubiera atendido el tenor literal de las normas codificadas. Véanse: Resolución Núm. 1140/2002, Sala Ia de lo Civil, Tribunal de Casación, Sentencia 3-12-2002; Sentencia Núm. 825/2003, Sala de lo Civil, Tribunal Supremo; Sentencias del Tribunal de Casación de lo Civil 23-3-2001, y 30-1-1993; S. 12-06-2004; S. 15-10-2003 (España). Tanta es la importancia que la jurisprudencia española contemporánea ha puesto sobre el conocimiento, por parte del impugnador, de la realidad biológica como requisito para que pueda ejercitar la acción de impugnación de la filiación por inexactitud, que ha declarado que no se le puede exigir que la ejerza antes de que conozca ese hecho, y que el desconocimiento de la realidad biológica debe dar lugar a las mismas consecuencias que el desconocimiento del hecho del nacimiento cuando se impugna la filiación matrimonial. Por esta razón, el Tribunal Supremo Constitucional declaró inconstitucional el plazo para la impugnación de la paternidad matrimonial por inexactitud biológica que proveía la ley. Véanse: S. 138/2005, 26 de mayo de 2005; S. 156/2005, 9 de junio de 2005.
En otras palabras, nuestro homólogo español determinó que, al igual que en el caso de la filiación matrimonial, la acción de impugnación de la filiación por inexactitud no está sujeta al plazo de caducidad hasta el momento en que se conozca el hecho base en el que se sustenta. En el caso de la filiación matrimonial, ese hecho base es el nacimiento del menor, y en el caso de la acción por inexactitud biológica, el hecho base es la verdad biológica. De otro modo, se violaría el principio general de que los plazos comienzan a transcurrir desde que el afectado pudo llevar la acción o conoció los hechos que justificaban su causa de acción, principio que hemos usado en otras ocasiones para casos similares a éste. Véase Castro v. Negrón, supra.
La norma española exige, pues, que se tenga conocimiento de la inexactitud biológica para que comience a transcurrir el periodo de caducidad. En nuestro caso, no *584 creo prudente adoptar esa norma en toda su extensión. Más bien, el balance de intereses entre el derecho de un individuo a impugnar y cambiar una realidad jurídica inexacta, el derecho de las personas a la seguridad de su estado civil, y el interés del Estado en la estabilidad de las determinaciones filiatorias y las responsabilidades alimentarias, junto a la ausencia de acción legislativa para regular las acciones de impugnación de la filiación, nos constriñe a la adopción de una norma menos amplia. Además, actualmente la ciencia provee un método confiable para la comprobación de la paternidad, cuya accesibilidad impone a quien dude, o tenga razón para dudar de ésta, una obligación de actuar con diligencia. Por esto, resolvería que para que el término de caducidad de la acción de impugnación de la filiación por inexactitud comience a transcurrir no es necesario que el impugnador conozca de la inexactitud biológica. El término debe transcurrir a partir de que el impugnador tenga dicho conocimiento o tenga indicios confiables de la inexactitud biológica, o conozca de hechos que puedan llevar a un juzgador a tener una duda verdadera sobre la exactitud de la filiación, lo que ocurra primero.
III
Por todo lo anterior, revocaría la sentencia recurrida y devolvería el caso al Tribunal de Primera Instancia para que continuaran los procedimientos, según la acción de impugnación de reconocimiento por inexactitud que reconociéramos en el caso Mayol v. Torres, supra. Correspondería a ese tribunal determinar desde qué momento el peticionario tuvo conocimiento o indicios confiables de la inexactitud biológica, o el conocimiento de hechos que pudieran llevar a un juzgador a tener una duda verdadera sobre la exactitud de la filiación, para luego resolver si en efecto la acción había caducado.

 El peticionario no ha colocado a este Tribunal en posición de evaluar si el foro de instancia actuó con prejuicio o error manifiesto, de modo que pudiera intervenir con esta conclusión. Por otra parte, según hemos aseverado por años en nuestra jurisprudencia, la alegación del peticionario de que inscribió al niño porque la recurrida le indicó que si no lo hacía antes de que pasara diez días del nacimiento le impondrían una multa penal, no constituye error, violencia ni intimidación que vicie el reconocimiento voluntario que hizo del menor. Véanse: Almodóvar v. Méndez Román, 125 D.P.R. 218 (1990); Sánchez v. Sánchez, 154 D.P.R. 645 (2001).

 Si bien hicimos referencia al “breve plazo de tres meses” para impugnar el reconocimiento como elemento de la política pública contra el arrepentimiento. Mayol v. Torres, 164 D.P.R. 517 (2005).

 De igual modo ocurre con el reclamo del propietario de animales amansados que han sido ocupados, que si no se reclaman luego de veinte días desde la ocupación, pasan a ser propiedad de quien los ocupó. La naturaleza de la acción, la redacción del artículo y la época en la que se redactó nos indican que la reclamación de la que se habla no es una reclamación judicial, sino que basta con la reclamación y la búsqueda de los animales en el fundo ajeno.

 Aun si las partes se pusieran de acuerdo en cuanto al asunto, necesitarían de la intervención judicial para poder efectuar el cambio en la filiación.

 Es interesante notar que los legisladores italianos establecieron que la acción de impugnación de la filiación por inexactitud no prescribiría y que podría ser incoada por cualquier persona interesada en cualquier momento. La constitucionalidad de este artículo que establecieron los legisladores italianos fue impugnada en la década de los noventa, pero la legislación fue sostenida por el Tribunal Supremo Constitucional italiano. Véase Sentenza N. 112, 9-22 aprile 1997, della Corte Costituzionale; Articolo 263 del Codice Civile Italiano.
El texto del artículo en italiano es el siguiente:
“Art. 263 Impugnazione del riconoscimento per difetto di veridicitá
“II riconoscimento puó essere impugnato per difetto di veridicitá dall’autore del riconoscimento, da colui che é stato riconosciuto e da chiunque vi abbia interesse.
“L’impugnazione é ammessa anche dopo la legittimazione (280 e seguenti).
“L’azione é imprescrittibile.” Codice Civile, 8va ed., Roma, Ed. Jandi Sapi, 1979, T. 1, pág. 267.

 El rechazo al formalismo en las nuevas tendencias jurisprudenciales españolas llevó al Tribunal Supremo a sostener que seguir el formalismo de la ley e ignorar que el impugnador sólo puede llevar la acción cuando tiene conocimiento de la verdad biológica conllevaría instaurar por la ley situaciones de indefensión para el padre designado por la filiación y una clara injusticia. Véase la Sentencia Núm. 825/ 2003, Sala de lo Civil, Tribunal Supremo de España; STS 12-06-2004, Sala Primera, Tribunal Supremo de España.